## City of Princeton v. Pool.

(Decided October 24, 1916.)

### Appeal from Caldwell Circuit Court.

1. Municipal Corporations—Nuisance.—A city may be enjoined from maintaining and operating its sewers, constructed as a public necessity under legal authority, in an avoidable manner from which a nuisance results to the personal injury of an individual in his real property over and above that sustained by the public.

2. Municipal Corporations—Nuisance—Limitation of Actions.—If the nuisance and consequent injury result from continuing and recurrent acts in the avoidable manner in which the sewers are maintained and operated, the injuries therefrom are temporary, and the statutes of limitations bar a recovery only for so much thereof as occurred more than five years before the filing of the action.

3.  Appeal and Error—Verdict—Sufficiency of Evidence.—Upon the facts of this case a verdict of $2,500.00 for temporary damages held not to be so excessive as to indicate passion or prejudice.

S. D. HODGE, S. HODGE and R. W. LISANBY for appellant.

MILLER & MORSE and T. L. EDELEN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part, reversing in part.

The ground upon which the city of Princeton in Caldwell county is built is supported by cavernous limestone. A large creek runs through and under the city. This creek, in a natural depression or sinkhole known as Cave Spring in the northwestern part of the city, enters the ground and in a subterranean channel passes under a portion of the city for a distance of about 2,500 feet, when it again comes to the surface at a place known as the Big Spring in the southeastern part of the city, from which place it continues on top of the ground in a well defined channel through and out of the city. The underground channel is sufficiently large to carry the waters of the creek during flood times, and in addition the surface of about seventy-three acres of a thickly populated portion of the city drains naturally into it at the Cave Spring. For a long time the waters of this stream, where it comes to the surface at Big Spring, furnished the principal water supply to the population of the city. As the city grew and covered the territory which drains into the stream at the Cave Spring, the water of the stream became so polluted as to render it unfit for domestic use. That the waters of the stream had become unfit for such use prior to 1907 is conclusively shown by the testimony in this case.

In 1907 the city of Princeton, pursuant to ordinance, constructed a system of sewers which it connected with the subterranean portion of this stream in such a way as to discharge the sewage from the city into the stream to be carried off by it. The place where this stream comes again to the surface, known as the Big Spring, is almost back of, but slightly above, the property of appellee, and the waters of the stream pass over or along the edge of appellee's lot. This lot faces upon Main street, one of the principal streets of the city, and is less than 200 feet from Court Square, upon which is located

the county courthouse, and is much higher in the front at the street than in the rear at the stream.

On February 13, 1915, appellee instituted this action against the city to recover damages for the pollution of the waters of the stream, claiming that such pollution deprived him of his customary and rightful use of such water, and for damages to the use, occupancy and rental value of his property, asserting that the discharge of the sewage of the city into the creek back of his premises not only rendered the waters of the stream unfit for use, but contaminated the air to such a degree as to injure the use and rental value of his property. He also asked an injunction to abate the nuisance alleged to result from this use of the stream by the city.

The city traversed the allegations of the petition and plead affirmatively the necessity of a sewerage system; that the stream furnished the only means of disposing of the city sewage; that the sewerage system as constructed was a permanent structure and that appellee's cause of action was barred by the five-year statute of limitations.

Upon the issues joined and the proof, the chancellor adjudged that the discharge of the city sewage into the subterranean channel of the stream was a nuisance and should be abated, and enjoined the city from discharging the sewage into the stream, and to abate the nuisance by disconnecting the sewers with the subterranean channel within six months. He then transferred the case to the common law docket and submitted the question of damages incurred by appellee within five years before the filing of the petition to a jury, which returned a verdict upon that issue for appellee in the sum of $2,500.00.

To reverse the judgment of the chancellor enjoining the abatement of the nuisance by disconnecting the sewers with the subterranean channel, and the judgment on the verdict of the jury for damages, this appeal is prosecuted.

1. It is urged, first, that the chancellor erred in declaring the discharge of the sewage into the stream a nuisance and ordering its abatement; that in any event the chancellor erred in fixing the manner of abatement, even if a nuisance was found to exist.

Appellee's remedy for injuries sustained from the construction and maintenance of the sewerage system, as well as the extent of the power of the chancellor to

regulate same by injunction, depends upon whether or not, in any case, the injury complained of necessarily results from the construction of sewers, or from the manner in which they were maintained and operated.

Before proceeding to discuss the propositions of law presented, it will be profitable, in order that we may properly confine the law propositions involved here, to first state our conclusions of fact upon the evidence.

The proof is conclusive that the filth, dumped from the sewers into the underground channel of the stream, was deposited along the banks and in the bed of the stream upon and near appellee's property in such a manner that the atmosphere about his property was so contaminated as to limit and render its use and occupancy extremely disagreeable and dangerous to the health of the occupants, especially in dry seasons when the water in the stream was low and sluggish; that in addition to the disagreeable and dangerous odors eminating from these deposits, a condition was created in which mosquitos and other disease bearing insects and germs were produced, all of which interfered with and injured the use and rental value of appellee's property; that this condition resulted from the continuous and recurrent acts of the city; that a public nuisance was thereby created by the city in the immediate vicinity of appellee's property from which he sustained a personal injury over and above that sustained by the general public. As to whether the condition from which the damage to appellee's property results, necessarily arises from the construction of the sewers as permanent structures, or from the avoidable manner in which the sewers are maintained and operated by the city, there is some room for disagreement, as is nearly always the case. We are of the opinion, however, that upon the evidence here this condition is satisfactorily shown to result from the manner in which the sewerage system is maintained and operated rather than from the permanency of the structure; that the nuisance can be abated by the city with comparative ease at a moderate expense and with the result that the city will not be deprived of the reasonable and necessary use of its permanently constructed sewerage system, and that appellee may enjoy the use and occupancy of his property free from injury from that system.

Princeton is a city of the fourth class and by its charter empowered to make all regulations necessary to secure the general health of the inhabitants of the city and to construct sewers, so that there can be no question but that for such a city a sewerage system is a public necessity, to construct and maintain which ample power is conferred upon the city, if, in fact, the duty is not imposed by Section 3490 of the Kentucky Statutes.

In an amended answer the city plead that this stream offered the only practical means of drainage for a city sewerage system, which is not denied by appellee.

It therefore results that the sewerage system involved here is a permanent structure and a public necessity, constructed under valid legislative authority, but that the nuisance of which appellee complains as a result thereof does not necessarily result therefrom, but results from the avoidable manner in which the sewerage system is maintained and operated by the city. This being the case, it is not necessary for us to decide here whether an injunction would lie to force the city to disconnect its sewers with the stream, a question upon which there is no decision of this court, and about which there is much conflict in the decisions of other jurisdictions. The only question presented here is whether or not the chancellor has the power to abate a nuisance which results, not necessarily from the permanency of the structure, but from the avoidable manner in which the sewers are maintained and operated. That he has such power under such circumstances is not open to doubt.

The chancellor, however, in the mandatory injunction which he granted ordered the city to disconnect its sewers with the underground channel, thereby depriving the city of the right to empty its sewage into the stream, which was a practical denial of the city's right to maintain sewers at all, since it stands confessed upon the pleadings that this stream affords the city the only practical means for that purpose. This was neither reasonable nor necessary under the proof here, which, as we have before stated, shows that the nuisance complained of by appellee resulted from the manner in which the city operated its sewerage system in permitting filth to accumulate upon the banks and in the beds of the stream upon appellee's property within the city, near a public street and within about 200 feet of the courthouse

square. Whether this nuisance can be successfully avoided by improving the drainage below the Big Spring, by an extension of a subterranean channel through an artificial sewer beyond the city limits, by some kind of disposal plant to be erected by the city, or otherwise, should have been left to the discretion of the city, to be exercised by it at the risk of subsequent liability to appellee if inadequately or improperly done. The injunction should have been directed to the discharge and accumulation of the contents of the sewers upon and near appellee's property in such a manner as to create a nuisance there, which would have safeguarded every right of appellee in his property and which was the only question before the court in this case, and should not have precluded all use of this stream, the only available means to the city, in the disposal of the city sewage, as the evidence does not show that the nuisance near appellee's property necessarily resulted from such use, and no nuisance was shown at any other place.

The city offered an amended answer alleging that it had abated the nuisance by drainage since the action was filed, but the court sustained appellee's objection to its being filed, to which ruling of the court appellant excepted at the time and now complains. This amended answer, while not a defense to the damages theretofore sustained by appellee, presented a defense, if true, to an injunction and should have been filed.

2. As will be seen from what we have heretofore said, the damages sustained by appellee were avoidable and resulted from the manner in which the sewerage system was maintained and operated, and were therefore temporary in their character. The nuisance from which these damages resulted was a continuing nuisance against which the statute of limitations did not run, except for such damages as had occurred five years before the institution of the action. The determination of the damage sustained within that period was properly referred to a jury, and the court did not err in transferring the case to the ordinary docket for that purpose.

Appellant's objections to the verdict of the jury are largely directed to the action of the court in fixing as the measure of damages the temporary rather than the permanent injury to appellee's property; but, as we have seen, in this the court was correct. City of George-

town v. Kelly, 123 S. W. 251; City of Henderson v. Robinson, 152 Ky. 245, 153 S. W. 224; City of Henderson v. Herron, 152 Ky. 341, 153 S. W. 440.

Some objection is also made that the damages awarded are excessive. While the proof is not without conflict as to the extent of the injury to appellee's property, the proof shows satisfactorily that upon his lot appellee has three storerooms fronting Main street, used for business purposes, with rooms above, some of which he uses as a residence for himself and family, a basement under the whole of the building used in connection with the storerooms, a large frame warehouse and a small dwelling upon the rear of the lot, and that the use, occupancy and rental value of all of these buildings were materially injured during the whole of the five years covered by the finding of the jury, and, during dry seasons, the entire property was rendered almost unfit and unsafe for use. This being the case, we are unable to say from the evidence that $2,500.00 is in excess of the real injury sustained by appellee. It is certainly not so excessive as to indicate passion or prejudice in the finding, as must be the case under the code before a reversal can be ordered.

All question of any damage to appellee by reason of his having been deprived of the use of the water from the stream by the pollution thereof from the city sewage is eliminated by the evidence, which conclusively shows that the water of the stream had been rendered unfit for such use long before the city turned the sewage into it by the natural surface drainage from a large and thickly populated portion of the city.

For the reasons indicated the judgment upon the verdict of the jury for damages is affirmed, and the judgment of the chancellor granting the injunction is reversed for proceedings consistent herewith.