## City of Harrodsburg v. Brewer et al.

### Same v. Frost.

### Same v. Sallee.

(Decided March 4, 1932.)

C. E. RANKIN for appellant.

R. W. KEENON, BACON R. MOORE, and WILLIAM SANDIFER, JR,. for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The city of Harrodsburg, Ky., is one of the fourth class. In the latter part of the year 1928, pursuant to ordinances theretofore enacted, it began the construction of a disposal plant, a scientific contrivance for taking care of and disposing sewerage. The plant was completed in December, 1929, when the city commenced operating it. The appellees and plaintiffs below, Garrett Brewer et al., William Frost, and Thomas Sallee, owned homes located near the plant, and on September 11, 1930, they filed their separate actions against the city in the Mercer circuit court seeking to recover damages against it because of the alleged nuisance created by the opera-

tion of the plant, whereby the atmosphere for a great distance therefrom, including the territory of the homes of the three plaintiffs, became contaminated with foul and poisonous odors, to such an extent as to render their premises almost uninhabitable at times, and whereby their use and occupation and their rental and permanent values were greatly reduced, and they sought judgment for the amount of such alleged damages against defendant.

The answers contested all the grounds of recovery, and upon the trial Garret Brewer et al. recovered a verdict for $2,750, William Frost recovered one for $950, and Thomas Sallee recovered one for $350. Defendant's motion for a new trial in each case was overruled and from the judgment pronounced on the verdict it has prosecuted an appeal in the Brewer and Frost cases and has filed a copy of the transcript in the Sallee case and moved this court for an appeal from the judgment recovered therein. The cases were consolidated and tried together below and will be so disposed of in this court.

The chief argument advanced in this court by counsel for the city for a reversal of the judgments, and upon which the two others made by him depend, is that the court erred in submitting to the jury the permanency of the cause of the alleged injury to the premises of each plaintiff, and submitting the measure of their damages as based upon such permanent cause. The other additional arguments made are: (a) That if the case was one permitting recovery for a permanent cause, then the instruction submitting it was improperly framed, and (b) that the verdicts in any event are excessive. The jury in its verdict in each case expressly stated therein, "This was under permanent injury instruction No. 2," and from which it indisputably appears that if the court erred in submitting the permanency of the wrong, with the measurement of damages in such case, it was most prejudicial and requires a reversal of the judgments. It is also manifest that if we should be of that conclusion a disposition of the other two collateral arguments above referred to, (a) and (b), will be unnecessary.

The evidence shows that the disposal plant, consisting of a septic tank and other appurtenances devised by scientific research and study, is of the latest plan and type and one which experience has demonstrated will function as intended and in a manner, if properly

managed and conducted, so as to prevent the damaging escape of odors, gases, or other contaminating substances, except, perhaps, upon occasions and then only in the immediate presence of the plant. The evidence also is undisputed that sometimes at the beginning of the operation of such a constructed plant, and until a correct knowledge of how it should be operated by the one who does it is acquired, there will be some offensive odors, but which in all cases can and may be eventually remedied. At the beginning of the operation, and as soon as the emission of odors was discovered to such an extent as to interfere with surrounding habitations, the city sent for an acknowledged expert, who came upon the scene and he found that the plant was constructed properly and in accordance with the most scientific method and that with greater familiarity with the proper method of operation the emitted odors would soon disappear. But, shortly thereafter, and while the city was attempting to follow the instructions so given, these actions were filed against it resulting in the judgments appealed from.

Instruction No. 2, under which the jury returned its verdict in each case, and to the giving of which defendant objected and excepted, was in these words: "If you find for the plaintiffs all or any under instruction No. 1 and further believe from the evidence that the said structure was permanent and the conditions producing the odors, if any, could not be remedied in the use of same, the measure of recovery would be the difference between the market value of the property immediately before the installation of the disposal plant and the reasonable market value of the property under the present circumstances." The record, therefore, sharply presents the decisive issue in the case, i. e., whether, under the facts proven, the cause of the injuries complained of could in any event be considered at the time the actions were filed as permanent so as to authorize the giving of the inserted instruction. It is admitted by counsel for the city that where the facts incontrovertibly show that the cause of the injury and damage complained of is permanent, then the jury should be so instructed and directed to return a verdict equal to the difference between the fair market value of the damaged property before the permanent cause was produced and its same value after it was done. Louisville & N. Ry. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121; Payne v. Smith, 198 Ky. 564, 249 S. W. 995; City of Madisonville v. Hard-

man, 92 S. W. 930, 931, 29 Ky. Law Rep. 253; City of Henderson v. Robinson, 152 Ky. 245, 153 S. W. 224; City of Henderson v. Herron, 152 Ky. 341, 153 S. W. 440; City of Princeton v. Pool, 171 Ky. 638, 188 S. W. 758; City of Madisonville v. Nisbit, 239 Ky. 366, 39 S. W. (2d) 690; and other cases cited in those opinions. The same cases also hold that where the evidence is conflicting as to the nature of the producing cause of the injuries, i. e., whether it is permanent or only temporary, then the issue should be submitted to the jury and the proper measure of damages furnished to it as based upon their finding as to whether it is permanent or temporary. Likewise, the same cases hold that if there is no substantial testimony as to the permanency of the cause producing the injury, then the jury should be instructed only on the measure of damages in case of a temporary one.

The cases in which recovery for permanent cause (being the difference between the market value of the property injured just before and just after the doing of the thing producing the injury was allowed) will in the main be found to be those where the damage and injury *necessarily* resulted ipso facto from the structure or thing done, and not from its use after construction. An illustration of which would be the damming of a natural stream which is necessarily followed by backing of water to the injury of an upper proprietor. In that case as long as the dam remains as constructed the injury and damages will inevitably follow. Another illustration would be, the erection of an obstruction across an owned and possessed passway, the inevitable consequences of which would be the inconvenience produced thereby. In other words, such cases are those where the thing done in and of itself produces the injury, and not the *way and manner* that defendant operates or uses it. It is true that the disposal plant erected by the city in this case cost something like $50,000, but it, in and of itself, is no nuisance and produces no injury to any one. The damage begins only and continues only when and as long as the city attempts to operate it for the purpose for which it was constructed, and which can be rectified at any time, as the proof shows, by correct management by one who becomes sufficiently familiar with its operation to do so.

In the circumstances it is our conclusion that the city should have the right to sufficiently experiment with the operation of such a costly plant, so as to determine

whether it may or may not be operated in a manner unproductive of any nuisance effect to surrounding inhabitants, and to be given the opportunity, after such sufficient length of time for that purpose, to entirely abandon its use before it should be charged with the duty to respond in damages flowing from a permanent cause. Under the proof in this case it is more than probable that within a comparatively short time the plant can and will be operated to the injury and damage of no one, and yet the judgments appealed from are in amounts almost if not quite equal to half of the value of the involved properties. We so held in the two cases of City of Henderson v. Robinson, and City of Henderson v. Herron, supra. To the same effect is the Pool case and others we have cited, including the late Nisbit case.

But it is strenuously argued that this court in the Hardman case, supra, authorized the giving of the permanent structure instruction under facts which counsel insist are analogous to those contained in the instant record. But our interpretation of that opinion does not sustain that argument. In that case the city insisted on having a prescriptive right to dump its sewage in a natural stream and it operated its sewage system for two years, during which time it claimed the right to do so under facts indisputably showing the damaging effect complained of by plaintiff in that action. Under such conditions our opinion therein, after stating the above-announced rules with reference to the character of injury, their submission to the jury, and the measure of damages following each, said:

"In applying these rules, it is often a difficult matter to determine whether the nuisance is permanent or temporary, or to establish any fixed rule. The solution of the question depends in a large measure upon the facts of each case. In the case at bar the sewer was completed to a point in front of appellee's house in the spring of 1903, and the city could at any time have removed the trouble by extending the sewer beyond his premises and to the place where it seems to have been contemplated it would go; but when the trial was had in January, 1905, no change had been made, and it is fair to assume that the city intends the sewer to remain as it was when work on it was stopped in 1903, and therefore it may be said to fall within the line of permanent structures, and the measure of damage

to appellee's property was as stated in the instructions—the depreciation in its market value directly caused by the nuisance."

It will be observed that the opinion found as a fact by and through a legitimate inference drawn from the actions of the city, that it intended "The sewer (of which complaint was made) to remain as it was when work on it was stopped in 1903," and for which reason it should be considered permanent, since the city, in effect, had declared it so. No facts exist in this case from which any such inference might be drawn. On the contrary, it clearly appears that it is the intention and purpose of defendant, city of Harrodsburg, to remedy the improper *use* of its proven properly constructed plant and that rather an opposite inference should be drawn to the one stated in the Hardman opinion, i. e., that if it is demonstrated that it cannot operate its plant so as to prevent the conditions complained of in the petitions, it will abandon the use rather than be compelled to practically purchase all of the land surrounding it. At any rate, the record as presented, in the light of the conditions developed by the testimony, including recent installations and use, the proven efficacy of the nature of the plant constructed, and other facts, constrain us to the conclusion that the court erred in permitting (by its instruction No. 2) recovery for a permanent structure, and that the damages should have been confined to decreased rental value, and impairment of use and occupation by the owners who occupied their premises, and which was covered by instruction No. 3 given by the court.

Wherefore, the judgments in the Brewer and Frost cases are reversed, and the motion for an appeal in the Sallee case is sustained, and the judgment therein is reversed, with directions to grant the motions for a new trial, and to set the judgments aside and for proceedings consistent with this opinion.