## DARLING *v.* CITY OF MANISTEE.

1. MUNICIPAL CORPORATIONS — VOTING MACHINES — ELECTIONS — CONTRACTS.
   Under Act No. 217, Pub. Acts 1905, the common council of a city may provide for the issuance of certificates of indebtedness to purchase voting machines after the adoption of the annual appropriation, notwithstanding provisions in the municipal charter prohibiting the appropriation of any funds after the date of the annual appropriation bill.

2. SAME— CONTRACTS—RATIFICATION.
   And if the number of votes in the common council in favor of purchasing the machines, which were retained and used by the city, was insufficient, the contract was either ratified or executed by the subsequent action of the municipal council in voting to issue certificates of indebtedness for the purchase price thereof.

3. SAME—STATUTES.
   The statutory provisions contemplate the making of an appropriation to buy voting machines after the purchase.

4. PLEADING—AMENDMENTS—DISCRETION OF TRIAL COURT.
   The trial court did not abuse its discretion, in an action on a certificate of municipal indebtedness assigned to plaintiff, in permitting plaintiff to amend his declaration by correcting the date of assignment as alleged.

5. MUNICIPAL CORPORATIONS—RESCISSION OF CONTRACT — PLEA — BREACH OF CONTRACT—SALES.
   Having received and used voting machines for three years, without making any objections to the machines, a city might not avoid the payment of the purchase price by a claim that they failed to conform to the seller's warranty.

Error to Manistee; Withey, J. Submitted April 14, 1911. (Docket No. 67.) Decided May 8, 1911.

Assumpsit by Louis S. Darling against the city of Manistee, on a certificate of indebtedness. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Affirmed.

*F. H. Stone*, for appellant.

*Grant & Neal* (*Fellows & Chandler*, of counsel), for appellee.

The action was brought to recover an amount claimed to be due plaintiff as assignee of a certificate of indebtedness issued by defendant city. The amendment to the declaration referred to in the opinion was as to the date of the assignment of the certificate of indebtedness to plaintiff by the voting machine company to correspond to the proof as to the date of assignment.

BLAIR J.   At a regular meeting of the common council of the city of Manistee, held September 27, 1906, 11 of the 14 aldermen being present, a motion was made—

" That the mayor and clerk be authorized to enter into contract with the Abbott Voting Machine Company of Hudson, Mich., for the purchase of seven voting machines."

This motion received seven votes in the affirmative and there were four negative votes.   On the 28th day of September, 1906, the mayor and city clerk executed on behalf of the city an instrument in writing, in part as follows:

" THE ABBOTT VOTING MACHINE COMPANY,
                          "Hudson, Mich.
" *Gentlemen:*
    " Please enter our order for seven Abbott voting machines to be delivered on or before the 25th day of October, 1906, and paid for by the city of Manistee.   Six hundred twelve dollars and fifty cents on December 1st, 1906, and six hundred twelve dollars and fifty cents on the first day of December each year thereafter until the sum of two thousand four hundred and fifty dollars has been paid, without interest.

    " Upon the following conditions and not otherwise," etc.
    " If the machines do not comply with the above conditions they are to be returned at the expense of the said Abbott Voting Machine Company and the contract canceled," etc.

An acceptance of this order by the voting machine

company was indorsed upon it.    The seven machines were delivered to the city in October, 1906, and are still in its possession.    On December 4, 1906, a motion was adopted by a vote of 10 to 1—

"That the mayor and clerk be authorized to sign three certificates of indebtedness of $612.50 each, payable to the Abbott Voting Machine Company, Hudson, Michigan, in payment of the purchase price of voting machines."

At the same meeting, the report of the finance committee recommending the payment, among other items, of "Abbott Voting Machine Company, first payment on contract, $612.50," was adopted by unanimous vote of the 11 aldermen present, and this payment was made.    No. 2 of the certificates of indebtedness was as follows:

"Know all men by these presents, that the city of Manistee, in the county of Manistee, and State of Michigan, acknowledges itself indebted to the Abbott Voting Machine Company, of Hudson, Michigan, or bearer, providing the said machines prove to be satisfactory and in accordance with a certain contract entered into by and between the said Abbott Voting Machine Company and the said city of Manistee, on the 28th day of September, 1906, in the sum of six hundred twelve and $\frac{50}{100}$ dollars for value received, which the said city of Manistee promises to pay to the Abbott Voting Machine Company or bearer, at the office of the city treasurer, Manistee, Michigan, December 1, 1907, with interest at the rate of 4 per cent. per annum after due until paid, according to the terms of said contract.

"This certificate of indebtedness is one of a series of four certificates of six hundred twelve and $\frac{50}{100}$ dollars each, amounting in aggregate of twenty-four hundred fifty dollars, issued by the said city of Manistee, to the said Abbott Voting Machine Company, in payment of the purchase price of voting machines, according to the terms of said contract, pursuant to Act No. 217 of the Public Acts of 1905.

"In testimony whereof, the said city of Manistee has caused this certificate to be signed by its mayor and clerk this 5th day of December, 1906.

[Seal.]          "JAS. A. KING, Mayor.
                 "C. A. GNEWUCH, Clerk."

The evidence is undisputed that the defendant, through the records of its common council, has adopted these machines, provided for their use, used them, paid bills concerning them, and in every way has acted in reference to them as though the machines belonged to the defendant and were accepted by it. The machines have been in the possession of the defendant since October 26, 1906, up to and including the time of the commencement of this suit on August 17, 1908, and were still in its possession at the trial thereof. The defendant has never officially claimed to the Abbott Voting Machine Company, nor to any one else, that said machines were not satisfactory and did not comply with the terms of the contract. The defendant, prior to the commencement of this suit, has never offered to return the machines or by its proper officers notified the Abbott Voting Machine Company that it had any complaint to make in reference to said machines. This suit was brought upon the above-described certificate by the plaintiff as assignee of the voting machine company and resulted in a verdict in his favor by direction of the court. The defendant brings the case to this court by writ of error.

The principal point made by the defendant is that the common council had no power to authorize the mayor and city clerk to enter into the contract and to execute the certificates of indebtedness for the reasons:

" (a) That there never was a resolution passed authorizing the mayor and city clerk to sign this contract, or to execute the certificate of indebtedness in question in this suit.

" (b) That the motion purporting to authorize the mayor and city clerk to sign the contract did not pass and should have been declared lost by the presiding officer.

" (c) That there was no previous appropriation made for the purpose of purchasing these machines or for the incurring of the obligation to pay for them."

In support of his contentions, counsel cites section 7 of chapter 8 and sections 10, 12, 14, and 15 of chapter 26 of the city charter. Section 7 provides, among other things:

" No money shall be appropriated except by ordinance or resolution of the council, nor shall any resolution be passed or adopted except by a majority of all the aldermen elected to office, except as herein otherwise provided."

Sections 10 and 12 provide for the preparation of estimates and the passage of an annual appropriation ordinance in the month of September specifying the objects and purposes for which appropriations are made for the ensuing year. Section 14 provides that:

"After the passage of the annual appropriation bill, no further sums shall be used, raised or appropriated; nor shall any further liability be incurred for any purpose, to be paid from any general fund."

Section 15 provides:

" No improvement, work, repairs or expense to be paid for out of any general fund, or street district fund, excepting as herein otherwise provided, shall be ordered, commenced or contracted for, or incurred in any fiscal year, unless in pursuance of an appropriation specially made therefor, in the last preceding annual appropriation bill," etc.

It is agreed that no specific appropriation was ever made for the purchase of the voting machines. It was contended by the plaintiff that the validity of the proceedings depends upon the provisions of Act No. 76, Pub. Acts 1895 (1 Comp. Laws, § 3804 *et seq.*) and of Act No. 217, Pub. Acts 1905.

Sections 3804 and 3805 provide, in part:

"That hereafter any township, village or city within this State may, by a unanimous vote of the township board of any township, or by a majority vote of the council or common council of any village or city, authorize, purchase and order the use of the Abbott or other voting machine in any one or more voting precincts at any election held within such township, village or city.   *   *   *

" SEC. 2. Before such township board, council or common council shall order, contract for, purchase, agree to purchase or order the use of any voting machine, they shall first test such machine by using the same under conditions, similar, as near as may be, to those of an actual

election. * * * And if, after testing said machine, as above stated, it shall prove satisfactory to said board, or council or common council, and fill all the requirements of section 3 of this act, they may then or thereafter purchase and order the use of said machine at all elections held thereafter in said township, village or city."

Section 3750, 1 Comp. Laws, is as follows:

" That the board of supervisors of any county may at their annual meeting by a two-thirds vote, authorize the use of any thoroughly tested and reliable voting machine at any township election, to be held within their respective counties, during the ensuing year after such annual meeting, and any city council, or village council may at any regular meeting authorize the use of such voting machines at any election to be held within their respective cities or incorporated villages during the ensuing year, but all voting by machines shall be a secret vote, as hereinafter provided."

In 1905, five new sections were added to this act (Act No. 217, Pub. Acts 1905); section 13 reading as follows:

" The local authorities, on the adoption and purchase of a voting machine, may provide for the payment therefor in such manner as they may deem for the best interest of the locality and may for that purpose issue bonds, certificates of indebtedness or other obligations, which shall be a charge on the city, town or village. Such bonds, certificates or other obligations may be issued with or without interest, payable at such time or times as the authorities may determine, but shall not be issued or sold at less than par."

We are of the opinion that the provisions of the city charter cited do not apply to the purchase of voting machines provided for by separate and distinct acts, and that contracts made in conformity with the provisions of the act should be held valid, although not in conformity with general provisions of the charter.

The statute does not prescribe the form which the action of the common council shall assume, but provides merely for a majority vote in any method the common council may choose to adopt. Assuming that the major-

ity vote required must be a majority of all of the alderman elected, such majority was supplied at the meeting of December 4, 1906.

If the contract of September 27th was invalid because not adopted by a sufficient number, it was validated by the action relative to the certificates of indebtedness expressly referring to and adopting it. Again, the contract was one which the statute expressly empowered the common council to make, and, if it failed to make it in September, it either ratified it or made it anew in December.

The provisions as to the purchase of, and payment for, the machines are inconsistent with the view that the legislature intended that appropriations for their purchase should precede their acquisition. Provisions for payment, including appropriations therefor, if there is no fund available, are to be made after the purchase, and not before.

The amendment of the declaration so as to properly state the assignment was within the discretion of the circuit judge, which was properly exercised.

It is further contended by defendant that the circuit judge erred in not submitting to the jury whether there had not been a breach of the warranty contained in the contract. Under the contract, the machines were to be returned if they did not comply with the conditions, and the city could not, after fully accepting the machines, using them as its own without complaint and without offering to return them, raise the question of noncompliance by notice under its plea filed August 2, 1909, nearly three years after the making of the contract. It was the duty of the city to act within a reasonable time, and, not having done so, it must be deemed to have accepted these machines as being in full compliance with the contract.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and STONE, JJ., concurred.