STATE, *ex rel.* HENRY H. COLE, v. T. C. KELLER, as Tax Collector of the City of Tampa.

176 So. 176.

Opinion Filed September 18, 1937.

*C. Fred Thompson, Frank T. Phillips* and *Claibourne M. Phipps,* for Relator;

*Alonzo B. McMullen* and *Ralph A. Morsicano,* for Respondent.

TERRELL, J.—In October, 1936, the City of Tampa had commitments with the Works Progress Administration for projects to be executed within the city amounting to large sums. The City's part on said commitments was approximately $300,000, which had to be raised to complete the projects. It was not included in the annual budget of the city and had to be raised from new sources of revenue.

It was consequently resolved by the Board of Representatives of the city that the best way to raise this amount of new revenue was to impose an additional license on businesses and professions including attorneys at law. Ordinance Number 598-A was accordingly enacted, the pertinent part of which relating to professions is as follows:

"Auditors, public accountants, auditing companies, physicians and surgeons, whether medical, chiropractic or otherwise, attorneys, veterinarians, architects, civil engineers and surveyors, dentists, and other professions which have heretofore been rated as $25.00 or less shall pay, if their income during the preceding year has been in excess of $5,000.00, an additional license tax to be computed as folfollows:

"Where income from $5,000.00 to $7,500.00, an additional tax of ................................$ 50.00

"Where income from $7,500.00 to $10,000.00, an additional tax of ................................ 75.00

"Where income from $10,000.00 to $20,000.00, an additional tax of ................................ 125.00

"Where income is over $20,000.00 ................................ 175.00"

Contemporaneous with the enactment of this ordinance, other ordinances affecting businesses and professions were enacted as part of the same taxing scheme. No license tax on any business or occupation other than those listed above was based upon income except wholesale and retail merchants and as to them, it was based on a percentage of the gross sales.

Relator, a practicing attorney, tendered the Respondent $25.00, being the amount required for a license to practice law in the city prior to passage of Ordinance Number 598-A, and demanded the issuance of a license for the new year. He stated that his gross income exceeded $5,000.00 per year, but demanded the issuance of a new license on the theory that Ordinance Number 598-A was void. Respondent refused to issue the license except on conditions set out in the ordinance as here quoted. Relator then instituted this proceeding by petition in mandamus, the alternative writ commanding the respondent to issue the license on the payment of the sum of $25.00, notwithstanding Ordinance Number 598-A or show cause why he refused to do so. The case is up for consideration on a motion to quash and a motion to strike certain parts of the alternative writ. Both motions were directed to the same objective, so we treat them as a motion to quash.

It is first contended that Ordinance Number 598-A as applied to relator denies him the equal protection of the law guaranteed by Section Twelve of the Declaration of Rights, Constitution of Florida, and the Fourteenth Amendment of the Constitution of the United States.

To support his contention, relator relies on Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 Sup. Ct. 525, 79 L. Ed. 1054, and the following Florida cases: State, *ex rel.* Lane Drug Co., v. Simpson, 122 Fla. 582, 166 So. 227;

State, *ex rel.* Lane Drug Co., v. Simpson, 122 Fla. 670, 166 So. 262; State, *ex rel.* Adams, v. Lee, 122 Fla. 639, 156 So. 249; Lane Drug Co. v. Lee, 11 Fed. Supp. 672; and Liggett Company v. Lee, 288 U. S. 517, 53 Sup. Ct. 481, 77 L. Ed. 929, 85 A. L. R. 699.

To neutralize the contention of relator respondent relies on Clark v. City of Titusville, 184 U. S. 329, 72 Sup. Ct. 382, 46 L. Ed. 569; Metropolis Theater Company v. Chicago, 228 U. S. 61, 33 Sup. Ct. 441, 57 L. E. 730, and like cases.

In the Stewart Dry Goods Case, the court was confronted with a Kentucky statute imposing an excise tax on retail merchants of one-twentieth of one per cent. on the first $400,000, or less of gross sales, two-twentieths of one per cent. on the excess of the gross sales of over $400,000, and not exceeding $500,000, five-twentieths of one per cent. on the excess of the gross sales of over $500,000, and not exceeding $600,000, and so on at the same rate of increase to $1,000,000, and one per cent. on the excess of gross sales over the $1,000,000.

In the application of the statute to the plaintiff the court found the increased rates on gross sales of over $1,000,000, to be determined by applying the rate applicable to each successive bracket and when so applied, the tax burden on $1,000,000 was not one per cent., but a composite ascertained by adding the total tax for the sales falling within the various brackets and dividing the sum by the dollar value of all sales. When thus applied, the merchant was required to pay .05 per cent. on $400,000 of gross sales, .305 per cent. on $1,000,000 of gross sales and .96 per cent. on $15,000,000 of gross sales.

On the basis of this finding, the court held that such a classification of gross sales for the purpose of an excise tax

was arbitrary and violative of the equal protection clause of the Fourteenth Amendment, that it could not be sustained as an excise on the privilege of merchandising because there was no reasonable relation between the amount of the tax and the value of the privilege, and because there was no such relation between gross sales the measure of the tax, and net profits as to justify the discrimination between the taxpayers.

In Clark v. Titusville, the court was confronted with an ordinance of the City of Titusville in Pennsylvania imposing a license tax on wholesale and retail merchants. As to the retail merchants, the tax was five dollars on those whose sales during the preceding year did not exceed $1,000; as to those whose sales ran from $1,000 to $2,500, the tax was ten dollars; as to those whose sales ran from $2,500 to $5,000, the tax was fifteen dollars; as to those whose sales ran from $5,000 to $10,000, the tax was twenty-five dollars, and so on to a tax of one hundred dollars on those whose sales ran to $60,000 or more.

This Act was attacked on the ground that merchants in one class would be required to pay at a higher rate than those in another class and the percentage of tax to sales was greater on merchants in the lower than on those in the higher brackets.

The Court upheld the Act against both attacks on the ground that all merchants falling within the different brackets were treated alike and that the purpose of the Act was to impose a heavier tax as the business increased. The Court also held that in any general classification some injustice must be done, that equal protection demands only reasonable uniformity in dealing with parties similarly situated and that the tax did not purport to be fixed on a percentage of sales.

It will be noted that the grounds of assault on the Act in each case was different. The Court distinguished them on the ground that it was the purpose of the Act in the Titusville case to impose a larger excise on the larger business which could be accomplished by a graduated tax on gross sales while in the Stewart Dry Goods case, a tax based on a percentage of gross sales in the manner enforced required the merchant doing the larger business to pay a greater excise in gross amount but larger in proportion to gross sales than that demanded of his smaller competitor.

These cases present a typical instance of resolving the question of constitutional validity on the basis of practical application to the subject affected. Difficulties may be expected to arise in resolving these situations, but each case must turn on its peculiar facts rather than what was said in a prior case. The Federal Supreme Court not only declined to hold that the Stewart Dry Goods case overruled the Titsuville case, but announced a clear field of operation for both which may be readily perceived if viewed in the light of the assault and the facts affecting them. We thought it proper to discuss these cases at length because of the divergent view of counsel relative to them.

The tax complained of in the instant case being an excise imposed for the privilege of practicing law must be limited in application to Relator's income from that business. It does not contemplate income from other sources which are wholly independent of and separate from that obtained from his law practice. Limited in this manner, it might be possible, though we do not decide that question, to uphold on authority of the Titusville case, but if it can be predicated on sources of income independent of his law practice, then it may be ruled by the Stewart Dry Goods case or it may run counter to Section Eleven of Article Nine

of the Constitution of Florida. The facts before us are not sufficient to warrant a decision of these questions. The distinction between the two cases is in some respects metaphysical, but if it was not and the facts were present, the answers could be very properly pretermitted because the case can be disposed of on the question of the city's power to impose the tax.

The power of the City of Tampa to raise revenue for general operating expenses is limited by the annual budget as defined in the City Charter, the pertinent provisions of which are as follows:

Section Three, Chapter 15525, Special Acts of 1931:

"The annual budget of the City shall be submitted by the Mayor to the Board of Representatives on or before the first Tuesday in May of each year, or as soon thereafter as practicable, for consideration and adoption."

Section 4 of the same Act:

"Upon adoption of the annual budget, or as soon thereafter as practicable, the Board of Representatives of the City shall proceed to determine the amounts which shall be necessary for the carrying on of the government of the City during the next ensuing year, and shall proceed to fix the millage or tax levy necessary for said purpose."

Section 5 of Chapter 16727, Special Acts of 1933:

"That when and as the annual budget of the City of Tampa shall be made and adopted as provided by law, it shall thereupon be determined the amount of money necessary to be raised for the general Fund of said City by 'ad valorem' taxes on the real and personal property within the City of Tampa subject to taxation, and it shall be the duty of the officers of the City of Tampa charged with the duty of making such levy to levy such taxes for whatever

amount it is determined it is necessary to be raised by such taxation for such fund, not exceeding twelve mills."

Section 71 of the City Charter adopted pursuant to Chapter 13455, Acts of 1927:

"No funds raised by taxation or arising from the sale of bonds shall be diverted by the City for any purpose other than that for which the funds were raised, nor shall any contract be entered into in excess of the funds provided for carrying them out, and any contracts in violation of this section shall be void."

We construe these provisions of the City Charter to require the making of an annual budget to be submitted to the Board of Representatives for consideration and adoption on the first Tuesday in May of each year or as soon thereafter as possible. The annual budget is nothing more than an invoice of the City's activities during the ensuing year and an estimate of their cost.

When the annual budget is adopted, the Board of Representatives is required to determine the amount of money necessary to be raised by *ad valorem* taxes to carry it out and to impose a tax of not exceeding twelve mills on all real and personal property for that purpose. No funds are authorized by the City except as provided in the annual budget and in particular cases by bond issues, but in either event, they must be expended for the purpose designated. Under the last quoted provision of the City Charter, any contract not made in contemplation of the annual budget is void.

It is too academic to require supporting authority that a municipal corporation can exercise only such powers as are granted to it in express terms or such as may be necessarily implied from those granted. Any reasonable doubt as to the existence of the power will be resolved against the mu-

nicipality. It would be difficult to more clearly define the power of the City of Tampa with reference to raising and expenditure of public funds.

The alternative writ in this case shows that the City made and adopted its annual budget for the year 1936 as the law directs, that in making its estimate of all city expenditures for the year it contemplated $253,000 from excise taxes on businesses and professions under Section 307 of its compiled ordinances. The alternative writ further shows that the excise tax complained of was a new and additional tax over and above the $253,000 contemplated by the budget, that it was no part of the annual budget, that it was imposed to meet the City's part of approximately $300,000, on commitments with the Works Progress Admisistration, that there were no funds in the Treasury to pay the City's part of said commitments, that it was necessary to provide funds over and aside from those provided in the budget and that the most feasible way to provide them was to impose an additional excise tax on businesses and professions.

We find no authority on the part of the City to impose such a tax. It is not within the budgetary requirements of the City and is shown to be an attempt to raise and expend tax funds for a purpose not contemplated by the annual budget. The imposition is unreasonable and arbitrary because it is alleged to be for a purpose of the utmost importance to the City, yet the burden is distributed among a select class constituting a small percentage of the taxpayers. The general power to impose an excise tax was exhausted when the City imposed the original tax under Section 307 of its compiled ordinances. It has no authority to come back and double or treble the tax on a single sector of the population to liquidate an improvement alleged to be for the good of all and essential to the welfare of the city.

But it is urged by the respondent that an emergency existed, that the projects for which the City has commitments with the Works Progress Administration are highly important, that the requirement of the annual budget was merely an authorization without a limitation, and that such being the case, there was power in the city to impose the tax.

The answer to this question is that an emergency does not create and vest power in a municipality where none existed in the first place. The Legislature is the source of the municipalities' power and such as does not flow from it is not vested. The Legislature may declare an emergency as a pretext for remedial legislation, but unless authorized to do so, the municipality has no such power. The very purpose of an annual budget is to limit the power of the city with reference to raising and expending public funds.

The scope of the Court's inquiry into a municipal taxing ordinance is much broader than its inquiry into an Act of the Legislature. In the former, it extends to reasonableness as well as legality and is resolved by the practical application of the Act or ordinance to the individual case. This being the rule, a so-called emergency ordinance may be stricken down for unreasonableness as well as for lack of power to enforce it. City of Pensacola v. Lawrence, 125 Fla. 830, 171 So. 793.

The law seems settled that the Federal Government through agencies provided by it may make loans to a county or municipality to construct or aid in the construction of municipal or county projects. Duke Power Company v. Greenwood County, 81 Fed. (2nd) 986, but such a power does not, *sua sponte,* clothe the county or municipality with authority to contract with the Federal Government or its agencies. Such contracts must be made in the same man-

ner and under the same authority as contracts with individuals. Arkansas-Missouri Power Company v. City of Kennett, 78 Fed. (2nd) 911.

Budgetary laws grew out of a necessity to require governmental entities to live within their income and conduct their affairs with system and dispatch. In our view, they are mandatory and when clothed in the language of that under review, they limited the power of the municipality to raise and spend public funds. They have no other virtue. If this factor in them is to be ignored, they had as well be abandoned; but the charter with which we are concerned here goes further and vitiates contracts not made in contemplation of it. Tapers v. Pichard, 124 Fla. 549, 169 So. 39; Smith Canal or Ditch Company v. City of Denver, 20 Colo. 84, 36 Pac. 844.

In the enactment of any kind of a tax law the Legislature whether State or Municipal, is torn between two conflicting interests, the predilection of the group on whom the tax is imposed to challenge it and the demand of the benefited group to lay on all the traffic will bear. Common sense, being inarticulate, rarely points the way out of the dilemma. It should be the pole star to guide the legislative body in all matters, but it is too often paralyzed under the spell of vociferous groups that have the distinction of controlling large blocks of votes.

Having reached the conclusion that the tax complained of was imposed without authority, it becomes unnecessary to discuss other questions urged. The motion to quash the alternative writ is denied.

It is so ordered.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., concurs specially.

Ellis, C. J. (concurring specially).—I agree to the conclusion reached upon the ground that no authority exists under the Charter of the City of Tampa to exercise such power of taxation as attempted by the Ordinance attacked, if indeed such power could be conferred by the Legislature.

The case does not present a question of classification as presented in either of the two cases discussed, viz.: Clark v. City of Titusville, 184 U. S. 329, 72 Sup. Ct. 382, 46 L. Ed. 569, and Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 Sup. Ct. 525, 79 L. Ed. 1054.

In the ordinance attacked an effort is obviously made to tax the studious labor, industry and talent by which one attorney makes his franchise or license produce more income than another's. Besides, it is an attempted tax on income in violation of Article IX, Section 11, Constitution of Florida. See McCaskell v. State, 53 Ala. 510, Ann. Cas. 1912 A 602, note.