No. 16,281.

SCHOOL DISTRICT No. 1 OF ARAPAHOE COUNTY *v.* HASTINGS,
AS COUNTY SUPERINTENDENT OF SCHOOLS.
(220 P. [2d] 361)

Decided May 22, 1950.    Rehearing denied June 26, 1950.

Mr. LAURENCE M. GUILFORD, for plaintiff in error.

Mr. CALDWELL MARTIN, Mr. J. F. LITTLE, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF in error, which was plaintiff in the trial court, sought an injunction restraining defendant from detaching a portion of its territory and annexing it to the contiguous Cherry Hills School District No. 36. A temporary restraining order and order to show cause was issued ex parte, subsequent to which, defendant filed her answer. After a trial, in which the facts were stipulated, the court found generally in favor of defendant and against plaintiff, dissolved the restraining order, and dismissed the petition.

Plaintiff, in seeking a reversal of the judgment, presents two specifications of points for our consideration: "1. That the Court erred in holding that defendant had authority to transfer a portion of plaintiff district, being a district of the first class, to contiguous Cherry Hills School District No. 36, without first submitting the question to a vote of plaintiff's electors at an annual election. 2. That the Court erred in holding that defendant had not acted arbitrarily, capriciously, and in abuse of discretion by failing and refusing to grant a reasonable continuance of the hearing upon the petition for transfer of a portion of plaintiff district so that plaintiff might be afforded a full and complete hearing thereon, or by failing and refusing to follow the opinion of the Attorney General regarding division of school districts of the first class." We discuss these specifications in the order adopted by plaintiff.

This matter first arose when twenty-one residents of a part of Cherry Hills Village, apparently being all of the legal voters resident within that portion of School District No. 1 which is involved in this controversy, filed their petition with the then County Superintendent of Schools asking that the territory in question be detached from Englewood School District No. 1 in Arapahoe county and that it be annexed to the contig-

uous Cherry Hills School District No. 36. After a hearing held by the County Superintendent on August 5, 1948, she granted the prayer of the petition and ordered the detachment of the designated territory from School District No. 1 and annexation to School District No. 36. She bases her right to make such an order upon that portion of section 63, chapter 146, '35 C.S.A. which reads as follows: "A portion of unorganized territory may be annexed to a school district, or a portion of one district may be detached from said district and annexed to a contiguous district, by the county superintendent, in his discretion, upon petition, in either case, of a majority of the legal voters resident within the territory to be so annexed, subject, always, to the limitation of the last preceding section."

The County Superintendent had in her possession an opinion of the State Superintendent of Public Instruction, specifically noting that the transferring of a portion of a school district is not subject to a vote of the electors.

The position of plaintiff school district is that the respective detaching and annexing ordered by the County Superintendent cannot be accomplished except upon a vote of electors of Englewood School District No. 1. Reliance is placed upon a portion of section 62, chapter 146, '35 C.S.A. This section deals with the organization of school districts and contains four provisos, the third of which reads as follows: "provided, also, that no city or town shall hereafter be divided into two or more districts, nor shall the districts of the first class be divided, except upon a vote of electors of the district, submitted at an annual election, a majority of all votes cast being in favor of such division;" It is contended that plaintiff is a school district of the first class, and that it is being divided by the action of the County Superintendent alone. An opinion of the Attorney General, issued just preceding the detachment and annexation, supports the view of the Englewood School District.

A brief survey of the legislation on this subject is highly pertinent to a solution of the question involved.

The General Laws of Colorado 1877, section 2475 (being section 29 of the School Act, later to become section 63, chapter 146, '35 C.S.A.), provided for the consolidation of two or more contiguous school districts, and for the detachment from one district of a segment and the annexation of such segment to a contiguous district. In both cases a vote of the qualified electors in each district was required.

Two years later, by S.L. 1879, pp. 164, 165, section 6, the approving vote of the electors of the districts affected, when two or more contiguous districts are to be united into one district, was retained, but the requirement for a vote of the electors was omitted when a fractional portion of one district was sought to be detached from the district and annexed to a contiguous district. The new provision reads as follows: "A portion of unorganized territory may be annexed to a school district, or a portion of one district may be detached from said district and annexed to a contiguous district by the county superintendent, upon petition, in either case, of a majority of the legal voters resident within the territory to be so annexed."

In the Session Laws of 1887, p. 385, section 13, this provision was re-enacted, with the clause at the end: "subject always to the limitation provided in section 28."

Section 28, being section 2474, G.L. '77, later to become section 62, chapter 146, '35 C.S.A., read as follows: "The qualified electors of such proposed new district, when assembled in accordance with the notice above required shall organize by electing a chairman and secretary. Every legally qualified elector, and none other, shall be entitled to vote at such meeting. After the organization of such meeting as above mentioned, a vote shall be taken by ballot, on the question whether or not the proposed district shall be organized. Those in favor of or-

ganization shall vote 'yes,' and those opposed 'no.' If two thirds of the legal voters so voting are found to be in favor of such organization, and not otherwise, the meeting shall proceed to elect by ballot, a board of directors of said district, who shall hold office until the ensuing regular election, as provided for in section forty-four (44) of this act. The secretary of said meeting shall immediately transmit to the county superintendent a copy of the proceedings of the meeting; upon the receipt of which, if the proceedings are found to have been in accordance with law, he shall establish and number such district, and enter a record of the same, and of the proceedings of the meeting, as provided in section twenty-four (24) of this act; *provided,* [1st] if such organization of a new district works great hardship to any head of a family, a statement of the facts may be submitted to the superintendent, and two disinterested persons, one to be named by the superintendent and one by the person effected [affected], and if in their judgment, good cause be shown for the transfer, he may be transferred to another district; *provided further,* [2nd] that no district shall hereafter be divided for the purpose of forming a new district, unless it contains an area of more than nine square miles, nor shall a district be divided, if by so doing, the remainder of the district shall be found to contain less than fifteen persons of school age; and when practicable, the district shall conform to government lines; *provided, also,* [3rd] that no incorporate city or town shall hereafter be divided into two or more school districts." It seems clear that the limitation in section 28, to which reference is made in section 29, is the 2nd proviso respecting the area and school population of the district.

Section 28 was amended by section 1, page 333, Session Laws 1889. The last proviso was amended to read: *"Provided, also,* That no city or town shall hereafter be divided into two or more districts, and districts of the first class shall not be divided except upon a vote of

the electors of the district, submitted at an annual election, and a majority of all the votes cast being in favor of such division."

Session Laws 1903, page 427, chapter 168, section 1, amended section 29, making provision for a new board of directors when a first class district is joined with district or districts of a lower class, and retained the rest of the section as set forth in Session Laws 1887.

We conclude that there was no need for holding an election of the voters in the two school districts involved in this case for the following reasons:

■ 1. The legislature, once having such a provision requiring an election (1877) repealed it in 1879 and gave the power to the county superintendent to detach a fractional portion of a school district and annex it to a contiguous school district. The provision orginally found in section 29, requiring a vote of the electors upon the detachment of a fractional portion of one district and its annexation to a contiguous district, has never been re-enacted.

2. When the legislature in 1887, at the conclusion of section 29, added the clause, "subject, always, to the limitation provided in section 28," it could only have referred to section 28 as it existed at that time, which section did not contain the proviso upon which plaintiff relies. We believe that the re-enactments of sections 28 and 29 by subsequent sessions of the legislature did not change the limitation to which reference is made in section 28, in so far as it applied to section 29.

In *Schwenke v. Union Depot & R. R. Co.,* 7 Colo. 512, 4 Pac. 905, this court adopted the principle that a statute which refers to, and adopts the provisions of, another statute is not repealed by the subsequent repeal of the statute adopted. In 50 American Jurisprudence, page 58, section 39, appears this confirming statement: "It is a general rule that when a statute adopts a part or all of another statute * * * by a specific and descriptive reference thereto, the adoption takes the statute as it

exists at that time, and does not include subsequent additions or modifications of the adopted statute, *where it is not expressly so declared."* (Emphasis supplied.) This principle also is discussed in *First Natl. Bank of Memphis v. McCanless,* 184 Tenn. 114, 195 S.W. (2d) 756, 168 A.R.L. 267. In all the subsequent statutes the singular of the word "limitation" continued to be used and not the plural "limitations," which would indicate that the limitation to which reference was made was the one that was applicable when reference was first made to a limitation in section 28. Another reason why it would seem that the legislature purposely continued to refer to but one limitation is that, if it had intended to refer to all limitations that might at any time after 1887 have been written into section 28, then it would necessarily have had to refer to other sections of the school laws relating to the time of holding elections or meetings in school districts of the first class.

■ 3. The construction which we have just adopted was actually accepted as the correct interpretation by our court in *Gorrell v. Bevans,* 66 Colo. 67, 179 Pac. 337. In that case, speaking through Mr. Justice Denison, we said:

"First: The only parts of §5908 (28) that can accurately be called limitations and are applicable to a *case of transfer* of territory are contained in the provisos as to area and number of children. It is not contended that these conditions are not fulfilled in the present case.

"Second: The other provisions of this section consist of requirements for elections and other proceedings for the formation of a *new district,* and some of such requirements, necessary for that purpose, are not in §5908 (28) but in §5907 (27).

"Third: The language of §5908 as to meeting, election, etc., does not fit the case of *a transfer of territory* but the formation of *a new district."*

Plaintiff points out that the opinion in the Gorrell-Bevans case was written as if chapter 203, page 580, Session Laws 1911, had not been called to the attention of the court. Assuming such to be the case, we do not believe that that affects the conclusions we have heretofore reached as set out in 1, 2 and 3. By this 1911 statute, the legislature re-enacted section 29 respecting unorganized territory and the detaching of a portion of one district and annexing it to a contiguous district, the section ending with the proviso: "subject, always, to the limitation of section 28."

4. The legislature in 1921, being the first session after the decision had been announced in *Gorrell v. Bevans, supra,* amended section 29 to cure a procedural defect that had been pointed out in Judge Denison's opinion and added the requirement that, "Upon the presentation of such petition the county superintendent shall fix a time for the hearing of the same and shall thereupon give written notice thereof to the districts affected, which notice shall be served by delivery of a copy thereof to the secretary or to any member of the board of directors." S.L. '21, c. 217, §1. In this amendment the legislature also added the italicized words, "in his discretion," in the sentence reading as follows: "A portion of unorganized territory may be annexed to a school district, or a portion of one district may be detached from said district and annexed to a contiguous district, by the county superintendent, *in his discretion,* upon petition, in either case, of a majority of the legal voters resident within the territory to be so annexed, subject, always, to the limitation of section twenty-eight (28)." S.L. '21, c. 217, §1. We believe that in the re-enactment of the statute in 1921, after our decision in the Gorrell-Bevans case, the legislature adopted the construction previously given it by this court. *Harvey v. Travelers Insurance Co.,* 18 Colo. 354, 32 Pac. 935; *Lyons v. Egan,* 110 Colo. 227, 132 P. (2d) 794.

This rule seems to apply in a double measure here, it appearing that the legislature not merely re-enacted the section of the law in question after the court decision, but, in respect to the authority to be given to the county superintendent to transfer the territory, it seems to have put it beyond cavil by adding the words: "in his discretion."

■ 5. The third proviso which counsel would apply in this case, it seems to us, deals with a different subject providing, as it does, "that no city or town shall hereafter be divided into two or more districts, nor shall the districts of the first class be divided, except upon a vote of electors of the district, submitted at an annual election, a majority of all votes cast being in favor of such division." The division to which reference is here made would appear to be not a matter of detaching a segment to be annexed to some other school district, but a division in the sense of splitting into two or more school districts. Thus Julius Caesar, in his Commentaries, referred to all Gaul as being divided into three parts. Likewise, in the biological sense, "division" into two separate organisms occurs in an amoeba in the process or reproducing its species. "Division," as used in the third proviso of section 28, seems to be a more basic process than a matter of detaching a segment from one school district and annexing it to another. The latter would appear to be more the method made familiar by Luther Burbank, of cutting a branch or twig from one tree and grafting it upon another. It is the latter process and not the former that the legislature has entrusted to the discretion of county superintendents.

■ It is our opinion that the trial court did not err in holding that defendant county superintendent had authority to transfer a portion of plaintiff district, being a district of the first class, to contiguous Cherry Hills School District No. 36, without first submitting the question to a vote of plaintiff's electors at an annual election.

There remains the question whether the trial court erred in holding that defendant county superintendent had not acted arbitrarily, capriciously and in abuse of discretion, and had not failed and refused to grant a reasonable continuance of the hearing upon the petition for transfer. The record shows that Mrs. Peterson, the then county superintendent, notified a member of the school board by telephone on August 1, 1948, of the receipt of the petition and that there would be a hearing on August 5th. A formal written notice was served on the school district officials August 3d. An officer of the school board then requested a continuance of the hearing until August 17th. Mrs. Peterson already had submitted her resignation as county superintendent to become effective August 15th. She thereupon consulted Mrs. Hastings, who had been chosen as her successor in office, and Mrs. Hastings requested Mrs. Peterson to hold the hearing before the latter's resignation became effective because the latter had more knowledge of the situation. Mrs. Peterson thereupon offered to continue the hearing to any date prior to August 15th. The school board directors refused to attend any meeting prior to August 17th. It is disclosed by the record that the president of the school board was present at the hearing on August 5th where he demanded a continuance to August 17th and refused the county superintendent's offer of an alternative continuance to any date prior to August 15th. The county superintendent's order recites the fact that both school districts affected were represented at the hearing by officers and counsel for the respective school districts. It was apparent from the evidence that the segment of territory detached from School District No. 1 was not being served by a school bus, whereas it appeared that the school bus of School District No. 36 could readily serve that area.

Under these circumstances we believe the trial judge was correct in ruling that the county superintendent had not abused her discretion in not continuing the hearing

12

to the one date designated by the plaintiff school board. *Benster v. Bell*, 83 Colo. 587, 267 Pac. 792.

■ We also believe that the county superintendent was not arbitrary, willful or capricious in obeying the laws of the state of Colorado by refusing to follow an opinion of the Attorney General, and by following the contradictory opinion of the State Superintendent of Public Instruction. Section 20, chapter 146, '35 C.S.A., contains the provision that it shall be the duty of the county superintendent to obey the legal instructions and decisions of the state superintendent of public instruction. Section 14, chapter 146, '35 C.S.A., provides that the state superintendent of public instruction "shall decide all points touching the construction of the school laws, which may be submitted to him in writing by any school officer, teacher or other person in the state, and his decisions shall be held to be correct and final until set aside by a Court of competent jurisdiction, or by subsequent legislation."

The judgment of the trial court is accordingly affirmed.

Mr. Justice Alter dissents.