No. 18,452.

CITY OF GOLDEN v. ROBERT E. FORD.
(348 P. [2d] 951)

Decided January 25, 1960.

Mr. WILLIAM D. JOHNSON, Mr. THOMAS J. CARNEY, Mr. LEO N. BRADLEY, for plaintiff in error.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANT in error, defendant below, was convicted in Police Magistrate's Court of the City of Golden of violating certain sections of Ordinance No. 389. We shall refer to the parties as plaintiff and defendant as they appeared in the trial court.

Appeal was taken to the County Court of Jefferson County, where upon trial the provisions of the ordinance were stipulated and received in evidence. No other evidence, except an admission of defendant's violation of the ordinance, was introduced. Following arguments of

counsel, and the motions of plaintiff for judgment and defendant for dismissal, the trial court took the matter under advisement and later granted defendant's motion to dismiss and entered judgment accordingly. Motion for new trial was dispensed with and the plaintiff is here by writ of error seeking reversal.

No questions of fact are at issue, the sole question being whether the ordinance on its face violates the Federal and State Constitutions, and whether the City of Golden has power to adopt such an ordinance.

.The ordinance, entitled: "AN ORDINANCE REGULATING PICKETING; PREVENTING DISORDER; PROMOTING PEACE, SAFETY AND HEALTH; PROTECTING PUBLIC AND PRIVATE PROPERTY; AND PRESCRIBING PENALTIES FOR VIOLATIONS OF ITS PROVISIONS," provides in pertinent part as follows:

It shall be unlawful for any person or persons for the following purposes:

(a) For the purpose of advertising the existence of a labor dispute;

(b) For the purpose of attempting to convince the employees of any employer to form, join or assist any organization;

(c) For the purpose of inducing others from entering the premises of any employer;

(d) From patronizing, transacting business with or negotiating with any such employer;

(e) For the purpose of dissuading any person from performing any service or furnishing any materials or commodities to such employer; to do any of the following:

(1) Use force, threats, coercion, or intimidation for the purpose of preventing any person from following a lawful occupation.

(2) To use loud, boisterous, obscene or profane language.

(3) To sit, stand, walk, march or place in front of, at,

or near the place of business of an employer, any number of persons greater than the following:

(a) For each entrance or exit of an employer thirty (30) feet or more in width opening on a public street, more than three (3) persons who shall continuously walk to a line or pattern and remain at least six (6) feet apart.

(b) For each entrance or exit of the employer not less than twelve (12) feet nor more than thirty (30) feet in width opening on a public street, no more than two (2) persons who shall continuously walk in a line or pattern and remain at least six (6) feet apart.

(c) For each entrance or exit of the employer less than twelve (12) feet in width opening on a public street, no more than one (1) person who shall continuously walk in a line or pattern.

(4) To obstruct the free entry or exit of goods, material, commodities, or persons from the place of business of any employer, by any means whatsoever.

(5) For more than five (5) persons to assemble within two hundred (200) yards of a picket line for the purposes of assisting, aiding, helping, encouraging or lending support to, in any manner whatsoever, to the person or persons on the said picket line.

(6) To obstruct in any manner free use of sidewalks, streets, roads or alleys of the City.

Though the constitutionality of this ordinance is attacked on several grounds urged both below and here, we need consider only one of them as determinative, viz., the pre-emption of the subject matter by appropriate state legislation, which ground was also considered and relied upon by the trial court. This ground is that the General Assembly of the State of Colorado has enacted comprehensive legislation regulating picketing in situations where labor disputes are involved; that this legislation completely covers the field, and that therefore the City of Golden did not have the power to adopt the ordinance in question.

Before discussing the matter further we point out that though the ordinance in question could apply to other persons, it is clear that it is a direct attempt on the part of plaintiff to regulate and restrict activities connected with labor disputes. The attempt to have it apply to others than workers does not avoid its true character as a labor ordinance.

■ The Labor Peace Act, C.R.S. '53, 80-5-1, et seq., enacted by the General Assembly in 1943, is a comprehensive statute regulating the conduct of parties to a labor dispute. Contained among its provisions are restrictions on mass picketing (80-5-6(2)) and protecting other activities that are normal incidents of picketing (80-5-16). Other provisions of the Labor Peace Act, though not dealing with the specific question of the regulation of picketing, are sufficiently comprehensive to embrace the entire field of regulation of disputes between employers and their employees.

It is now generally recognized that although much of the area of control and regulation of labor disputes has been pre-empted by federal legislation, there remains in the states, within the confines of constitutional limitations, certain power to regulate picketing and to protect public safety in so doing. The recognition of this basic right first occurred in *Thornhill v. Alabama* (1940), 310 U.S. 88, 60 S.Ct. 736, and has been defined in several subsequent cases, culminating in *International Brotherhood of Teamsters v. Vogt, Inc.* (1957), 354 U.S. 284, 77 S.Ct. 1166. The purport of the latter decision was summarized by Mr. Justice Douglas in his dissenting opinion as follows:

"The Court has now come full circle. * * *

" * * * .

"Today the court signs the formal surrender. State courts and state legislatures cannot fashion blanket prohibitions on all picketing. But, for practical purposes, the situation is now as it was when Senn v. Tile Layers Union, 30 U. S. 468, 57 S. Ct. 857, 81 L. Ed. 1229, was

decided. State courts and state legislatures are free to decide whether to permit or surpress any particular picket line for any reason other than a blanket policy against all picketing. * * *."

It is thus clear that there remains in the states authority to adopt reasonable regulations and restrictions upon the right to picket. Much of the area within which the states may so legislate has been covered by the Colorado Labor Peace Act, especially those provisions of 80-5-6 (2) dealing with employee unfair labor practices. An analysis of the scope and nature of these provisions discloses a comprehensive legislative scheme to control and regulate the field of picketing when such picketing is an incident of a "Labor Dispute" as defined therein in C.R.S. '53, 80-5-2 (7), the latter subsection reading in part:

"The term 'labor dispute' means any controversy between an employer and such of his employees as are organized in a collective bargaining unit, concerning the rights or process or details of collective bargaining. * * *."

The concept of state pre-emption of the field of control and regulation of the incidents of labor disputes was recently discussed in *Stephenson v. City of Palm Springs* (1958) (Cal. App.), 320 P. (2d) 238 (hearing granted by Supreme Court). There a municipal ordinance prohibiting "closed shops" was challenged. In holding that the California legislature, by enacting comprehensive legislation governing labor relations, had completely occupied the field, the court there stated at p. 242:

" * * * It is clearly apparent that under the complicated and inter-related conditions of modern business life, this should be and is a matter of widespread rather than local interest and concern, and that a contrary conclusion, permitting hundreds of varying and inconsistent local ordinances, would lead to indescribable confusion."

We are in agreement with the court in *Stephenson*

478

when it quotes from *Wilson v. Beville* (1957), 47 Cal. (2d) 852, 306 P. (2d) 789, 793, as follows:

"Determination of the question whether the Legislature has undertaken to occupy exclusively a given field of legislation depends upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate. (Citations.) Where the Legislature has adopted statutes governing a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme."

The logic of *Stephenson* is equally applicable to the instant case. The ordinance in question, insofar as it deals with the conduct of parties to a "labor dispute" is clearly an attempt to cover in a different and sometimes conflicting manner the same field as is covered by the "Labor Peace Act." As such, it must be held without force or effect.

It does not aid plaintiff's position to assert that its right to enact this ordinance is an inherent or express or delegated right it assertedly has as a city. Colorado municipalities are creatures of either legislative enactment or constitutional provision or both, as the case may be, and are not city states. See *Denver v. Sweet* (1958), 138 Colo. 41, 329 P. (2d) 441. They have only powers expressly or impliedly granted to them. No statute or constitutional provision has expressly given them power to regulate labor disputes or the type of conduct here sought to be regulated. Nor can it be said to be an implied power when the proper conduct of labor activities is a matter of statewide concern. Cf. *Canon City v. Merris* (1958), 137 Colo. 169, 323 P. (2d) 614. Express delegations of power to municipalities to " * * * pass and enforce all necessary police ordinances." (C.R.S. '53, 139-32-1 (8)) or to regulate streets (C.R.S. '53, 139-32-1 (20)) or "To prevent and suppress riots, routs, affrays, noises, disturbances, disorderly assemblies

in any public or private place." (C.R.S. '53, 139-32-1 (55)) are not express delegations to cities and towns to adopt this type of an ordinance which on its face covers matters of statewide concern already treated by state statute (C.R.S. '53, 8-5, supra). This is not to say, however, that the state, through its legislature and courts, cannot reasonably regulate picketing and rights of assembly with proper constitutional safeguards for those affected thereby, for picketing is not an absolute right at all times and places. See *Plumbers and Steamfitters v. Graham* (1953), 345 U. S. 192, 97 L. Ed. 946, 73 S. Ct. 585. Nor do we imply any limitation upon the traditional but statutory rights of municipalities to prevent disturbances of the peace and to maintain law and order by appropriate police action. It is only when the city's acts or regulations attempt to interfere with or cover, as here, a field pre-empted by the state or which is of statewide concern that they must fail. And it makes no difference whether the attempted exercise of power by a city is reasonable, as the plaintiff here urges on behalf of its ordinance, or is wholly prohibitory.

The judgment is affirmed.

MR. JUSTICE HALL not participating.