447 P.2d 209 (1968)
Theron V. GAREL, Plaintiff in Error,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SUMMIT and State of Colorado, Defendants in Error.
No. 23436.
Supreme Court of Colorado, En Banc.
November 25, 1968.
Charles E. Freeland, Denver, for plaintiff in error.
Tallmadge, Tallmadge, Willson & Lamm, James Willson, Jr., Denver, for defendants in error.
DAY, Justice.
The parties will be referred to as Garel and the Board.
The action was originally filed in Summit County but the venue was changed to the district court of the City and County of Denver by stipulation of the parties and agreement of the Summit County district judge. It was presented to the trial court on joint motions for summary judgment, in which both sides stipulated to an agreed statement of fact in the controversy.
Garel, a consulting engineer, contracted with the Board to furnish professional services in the design and installation of a sanitary sewer system in Summit County. The contract provided for partial payments at stated intervals as the work progressed. When the first partial payment came due, the Board authorized and issued a revenue anticipation warrant payable to Garel. He attempted to negotiate the warrant for cash, but was unable to do so. In his action he asked the court to declare:
(a) The absence of any authority in the Board to construct a proposed sanitary sewer system; and
(b) The invalidity of the revenue anticipation warrant proposed to be issued to finance the entire project including the *210 payment of Garel's fees. The Board in its answer requested a declaratory judgment that authority to undertake the project and to finance it as proposed was constitutionally granted to it.
In entering judgment the district court found for the Board and held that the county, through its commissioners, has the authority to construct, install, equip, operate and maintain a sanitary sewer project, and that it is by law authorized to finance such a project by means of anticipation warrants on revenues to be derived solely from the completed project.
The Board undertook the project involved herein pursuant to the authority set forth in C.R.S. 1963, 36-19-1 to 10, inclusive. Section 2 of the act gives cities or counties the authority to acquire, construct, maintain, add to and improve any public project as defined in the article. C.R.S.1963, 36-19-1(1) contains a definition of a public project as follows:
"Definitions.(1) `Public project' means any lands, buildings or structures, works, machinery, equipment, or facilities suitable for and intended for use * * * in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works * * * or facilities * * * as well as improvements or additions to any such lands, buildings, structures, works or facilities."

I.
It is the contention of Garel that the definition of "public project", even as limited to the public health, is so vague, uncertain and broad that it is a constitutionally defective delegation of legislative power to the Board, in effect giving the Board at the county level law-making power to determine what it may bring under the broad definition. He argues that the discretion thus vested in the Board contravenes the general rule that counties have only those powers which are expressly delegated to them by the legislature. In support of this proposition, Garel cites the following authorities: Farnik v. Board of County Commissioners of Weld County, 139 Colo. 481, 341 P.2d 467; Gunnison County v. Davis, 27 Colo.App. 501, 150 P. 324; Lewis v. Petroleum County, 92 Mont. 563, 17 P.2d 60, 86 A.L.R. 575; 20 C.J.S. Counties § 49. We do not disagree with the rule expressed in the authorities cited by Garel that counties possess only such powers as are expressly delegated to them. We are of the opinion, however, that the requirement of an express delegation of power does not preclude it from being made in general terms. The legislature may delegate authority in general terms without running afoul of the constitution. In Hazlet v. Gaunt, 126 Colo. 385, 250 P.2d 188, this court upheld the School District Reorganization Act of 1949 in the face of an attack upon it that it permitted an unconstitutional delegation of legislative power. In upholding the act we quoted the following from 16 C.J.S. Constitutional Law § 138:
"The legislature is not required to legislate for the guidance of executive agencies further than is practicable, and, if the circumstances require, may express the policy or standard in merely general terms."
See also Rinn v. Bedford, 102 Colo. 475, 84 P.2d 827.
Counties in this day and age are required to undertake innumerable services for its citizens. It would place an unwarranted burden upon the legislature to specify each and every service which the designated governmental entity may lawfully undertake. As stated in C. Rhyne, Municipal Law § 4-8 (1957):
"The state legislature, in order to obviate the difficulty of making specific enumeration of all powers it intends to delegate to the municipality, usually confers some power in general terms. Home rule charter enactments or amendments may be couched in the most general terms. The purpose of the general welfare clause in a statute is to extend the *211 powers of a municipality beyond those specifically enumerated to other things which are necessary to accomplish the purposes of municipal government. Special charters are often concluded with a clause conferring general authority to pass all ordinances which may be necessary for the promotion of the health, safety and welfare of the municipality which are not in conflict with the constitution or general laws of the state. * * *"
We conclude, therefore, that vesting in the county commissioners authority to acquire, construct and maintain public projects particularly defined in the act as intended for use in the promotion of the public health is not so broad or vague as to constitute an unconstitutional delegation of legislative power.

II.
Garel next argues that if we hold that the power vested in the counties to acquire, construct and maintain public projects is found to be constitutionally acceptable, a sanitary sewer system does not come under the statutory definition of "public project." We disagree. The authorities and common sense support the proposition that a sanitary sewer system is fundamental to the protection of public health and welfare. The act in question grants power to undertake the project to cities or counties, and the many authorities deal primarily with cities. Nevertheless, the principles involved are the same. Thus as stated in 13 E. McQuillan, Municipal Corporations, § 37.04 (3rd ed. 1950):
"Courts of other states have declared that a sewage system is a public necessity, and may be authorized from power to make all regulations necessary to secure the general health, etc."
See City of Princeton v. Pool, 171 Ky. 638, 188 S.W. 758; Kilcullen v. Webster, 260 Pa. 263, 103 A. 592. Cf. Town of Glendale v. City and County of Denver, 137 Colo. 188, 322 P.2d 1053.
Although not directly in point, an indication of how this court has heretofore characterized a sewer system in construing an act relating to formation of a sanitation district, Colo.Sess.Laws 1949, ch. 253 (C. R.S.1963, 89-5-1), we stated in People ex rel. Dunbar v. Proposed Toll Gate Sanitation District, 128 Colo. 33, 261 P.2d 152:
"* * * We thus approach the expressed declaration of intention in the formation of such sanitation districts and must not overlook that this is an expression of the unquestioned police power of the state in serving a public use for the `health, safety, * * * of the inhabitants of said districts,' * * *"
See also Ruberoid Co. v. North Pecos Water and Sanitation District, 158 Colo. 498, 408 P.2d 436. Cf. Town of Glendale v. City and County of Denver, supra.
We hold that the sewer system as contemplated to be constructed by the Board in Summit County is within the power conferred in the act and well within the definition of "public project" as provided therein.

III.
Addressing ourselves to the question of whether the anticipation warrants may be issued for the financing of the proposed project, we find the power vested by the act to be explicit. C.R.S.1963, 36-19-3, states as follows:
"Anticipation warrants.For the purpose of defraying the cost of construction, erection, or the reconstruction or improvement of existing facilities, the legislative body of any city or county may, pursuant to a resolution or ordinance, issue anticipation warrants, which order, resolution or ordinance shall set forth the proposed public project, the amount of warrants to be issued and the maximum rate of interest. In every instance, the order, resolution or ordinance shall provide that the project is being undertaken under the provisions of this article."
*212 There then follows express limitations on how the funds for redemption of the warrants shall be obtained and that no part of the project shall be a general obligation of the county or city or payable out of the general funds.
The judgment is affirmed.
KELLEY, J., dissents.