C & M SAND & GRAVEL, DIVISION OF C & M READY MIX CONCRETE COMPANY OF BOULDER, a Colorado corporation, Bertha J. Heil, Johannes Heil, Robert C. Heil, Erwin S. Heil, Martha H. Hillman, and Donald E. Heil, Trustees, Plaintiffs-Appellees and Cross-Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BOULDER, COLORADO, Defendant-Appellant and Cross-Appellee.

No. 82CA0815.

Colorado Court of Appeals, Div. I.

Sept. 8, 1983.

Hurth, Yeager & Sisk, John M. Yeager, Boulder, for plaintiffs-appellees and cross-appellants.

Ann T. Raisch, County Atty., William F. Nagel, Asst. County Atty., Boulder, for defendant-appellant and cross-appellee.

Perry P. Burnett, Denver, for amicus curiae Colorado Counties, Inc.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Janice L. Burnett, Paula C. Phillips, Asst. Attys. Gen., Denver, for amicus curiae Mined Land Reclamation Board.

Norton F. Tennille, Jr., Denver, George E. Benner, Jr., County Atty., Rio Blanco County, Meeker, for amicus curiae The Board of County Commissioners of the County of Rio Blanco, Colorado.

Earl G. Rhodes, County Attorney, Garfield County, Glenwood Springs, for amicus curiae The Board of County Commissioners of the County of Garfield, Colorado.

Patrick R. Mahan, County Atty., H. Lawrence Hoyt, Asst. County Atty., Golden, for amicus curiae Board of County Commissioners of Jefferson County.

Marshall McClung, Fairplay, for amicus curiae Board of County Commissioners, County of Park, Colorado.

VAN CISE, Judge.

This certiorari and declaratory judgment action was instituted in the district court as the result of the denial of an application of plaintiff C & M Sand & Gravel Division of C & M Ready Mix Concrete Company of Boulder (C & M) to defendant, Board of County Commissioners of the County of Boulder (the commissioners), for a special use permit to mine aggregate in an unincorporated area within the county. The commissioners appeal a declaratory judgment entered by that court holding that the county is barred and preempted by the Preservation of Commercial Mineral Deposits statute, § 34–1–301, et seq., C.R.S.1973 (the Preservation Act), and the Colorado Mined Land Reclamation Act, § 34–32–101, et seq., C.R.S.1973 (the Reclamation Act), as effective in 1980, from prohibiting mining operations by means of special use review procedure under the county zoning resolution. The plaintiffs appeal the trial court's dismissal of their C.R.C.P. 106(a)(4) claim for review of the commissioners' denial of C & M's application for a permit. We affirm in part and reverse in part.

C & M leased from the individual plaintiffs 195 acres of land in an area known as Geer Canyon for the purpose of mining aggregate therefrom. Under the county zoning resolution, part of this land is zoned forestry and the balance is zoned agricultural. Mining is not a use by right in either zoning district. It is a use permitted only if approved by the commissioners after a special use review procedure as specified in the zoning resolution.

Geer Canyon is identified as a "mineral resource area" and in particular an "aggregate resource area" in the county comprehensive plan. It is also so designated in the county's master plan for extraction, promulgated pursuant to the requirements of the Preservation Act and included within the comprehensive plan. However, the plan provides:

"2.09 It shall be County policy to strongly discourage intensive uses in Aggregate Resource Areas.

"2.10 Whether within or without a designated aggregate or other resource area, the County shall prohibit or regulate, including by Special Use Review and the like, the open mining of any mineral or earthen material including ... quarry aggregate, sand and gravel, ... as well as all accessory activities related thereto. It is emphasized that the extraction plan is fundamentally and primarily a preservation plan and that these portions of the County's commercial aggregate deposits shall be protected from the encroachment of land uses which tend to inhibit or preclude extraction so that the options of future decision-makers will remain open in considering the demand for aggregate. Conversely, it is not intended that an applicant for the extractive land use in an Aggregate Resource Area shall automatically be assured of success in lieu of addressing all environmental concerns.... Rather it is reemphasized that the extraction master plan shall insure the availability of an adequate supply of quality aggregate over the next 30 years so far as can be reasonably estimated."

In October 1979, C & M applied to the commissioners for a special use permit to mine aggregate on its leased property. The county planning staff and the planning commission recommended approval of the application subject to certain conditions. Following a public hearing, the commissioners denied it. In their resolution denying the application, the commissioners made 11 findings detailing how C & M's proposal failed to meet the criteria required for special use approval. None of the findings related to reclamation. Instead, the findings related to the impact on the existing neighborhood of such a large mining operation, which could exist for up to 40 years.

Plaintiffs timely filed this action in the district court, seeking (1) C.R.C.P. 106(a)(4) review of the commissioners' denial of the application, and (2) a declaratory judgment that the county zoning resolution requirement of a special use review for mining activities in agricultural and forestry zoning districts is void because local regulation is both specifically prohibited by and has been preempted by state law.

The commissioners moved for summary judgment on C & M's second claim, the preemption issue. In denying that motion, the trial court in effect entered a declaratory judgment that the Preservation Act forbids the Commissioners from interfering with the access to, and extraction of, commercial mineral deposits once they are so designated, as here, in the county's master plan for extraction included in the county's comprehensive plan. It, therefore, determined that the special use procedure, as applied to mining operations, is void because it is prohibited by § 34–32–109(6), C.R.S. 1973, which vests exclusive authority in the Mined Land Reclamation Board (the Reclamation Board) to grant mining permits, and because, as indicated in the Preservation Act, the area of mining regulation has been preempted by state regulations.

The court then dismissed the first claim, for C.R.C.P. 106(a)(4) review, holding that, if the special use review procedure as applied in this case was valid, the standards set forth in the zoning resolution for special use review were sufficient and there was competent evidence in the record to support the commissioners' fact findings and conclusions. This appeal and cross-appeal followed.

## I.

### PREEMPTION

The primary issue in this case is whether the trial court erred in determining that the entire field of regulation of land use for mining operations has been preempted by the Reclamation Act and the Preservation Act. The commissioners contend that land use concerns are not included within the scope of either of these statutes and that land use regulation has not been preempted. We agree with the commissioners.

No local government may adopt an ordinance or resolution that is in conflict with a state statute. Section 30–15–411, C.R.S. 1973 (1982 Cum.Supp.). If it does conflict, the ordinance or resolution is void. *City & County of Denver v. Howard,* 622 P.2d 568 (Colo.1981). However, for a conflict to exist, both the state statute and the local ordinance or resolution must contain express or implied conditions which are inconsistent and irreconcilable one with the other. Otherwise, the two can coexist and both are effective. *Ray v. City & County of Denver,* 109 Colo. 74, 121 P.2d 886 (1942). If there is no conflict between the two, there is nothing invalid about legislation on the same subject by both a local government and the state. *City of Aurora v. Martin,* 181 Colo. 72, 507 P.2d 868 (1973).

" 'Determination of the question whether the [general assembly] has undertaken to occupy exclusively a given field of legislation depends upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate.... Where the [general assembly] has adopted statutes governing a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme.' " *City of Golden v. Ford,* 141 Colo. 472, 348 P.2d 951 (1960).

An analysis of the various state statutes pertaining to regulating land use, which includes mining, leads to the conclusion that, contrary to the trial court's holding, Colorado is committed to local control of land use decision making.

The statutes pertaining to county planning, § 30–28–101, et seq., C.R.S. 1973 (1977 Repl. Vol. 12), vest broad authority in the county to regulate "uses of land for trade, industry [which includes mining], recreation, public activities, or other purposes," § 30–28–111(1), C.R.S. 1973 (1977 Repl.Vol. 12), through zoning and land use controls, including special use review. The Colorado Land Use Act, § 24–65–101, et seq., C.R.S. 1973 (1982 Repl.Vol. 10), provides in

§ 104(1)(b) that the land use commission "shall recognize that the decision-making authority as to character and use of land shall be at the lowest level of government possible." The Local Government Land Use Control Enabling Act, § 29–20–101, et seq., C.R.S. 1973 (1977 Repl.Vol. 12), specifies in § 102 that "the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." And in § 104(1) of that Act, each local government is authorized "to plan for and regulate the use of land by," among other things:

"(e) Regulating the location of activities and developments which may result in significant changes in population density;

(f) Providing for phased development of services and facilities;

(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights."

Local governmental authority to regulate mining operations by permit is also derived from a delegation of authority in the Areas and Activities of the State Interest Act, § 24–65.1–101, et seq., C.R.S. 1973 (1982 Repl.Vol. 10), and particularly in § 24–65.1–501. That section provides in subsection (1)(a) that "[a]ny person desiring to ... conduct an activity of state interest shall file an application for a permit with the local government in which such ... activity is to take place." Subsection (4) provides that "[t]he local government may approve an application for a permit to conduct an activity of state interest [and this includes extraction of and exploration for minerals] if the proposed activity complies with the local government's regulations and guidelines for conduct of such activity. If the proposed activity does not comply with the

guidelines and regulations, the permit shall be denied." *See also* § 24–65.1–301(1)(c), C.R.S. 1973 (1982 Repl.Vol. 10).

■ The Reclamation Act does not pre-empt local control of land use decision making. That Act is primarily concerned with the reclamation of land affected by the extraction of minerals both during and after mining operations. *See* § 34–32–102, C.R.S. 1973 (1982 Cum.Supp.). To assure that this objective is accomplished, section 109 of the Act requires that a mining operator apply for and secure a permit from the Reclamation Board. Section 112 specifies that in his application he must include a detailed reclamation plan for the area affected. On receipt of a permit, section 116 provides that in his mining operations he must comply with specific reclamation requirements, including: the submission of a reclamation plan and map each year; grading to the final land use; construction of earthen dams where necessary; proper handling of acid-forming or toxic materials mined; disposal of refuse so as to control deleterious effects; revegetation; use of topsoil for revegetation; minimization of disturbance to the hydrological balance; protection from slides or damage; stabilization of surface areas; fire and access roads through reclaimed areas; and slope stability.

It is significant that the Reclamation Act does not mention the many matters which are traditionally of concern to local zoning authorities such as lessening of traffic congestion, compatibility of land use, distribution of land use and development, protection of tax base, effect on property values, increased noise, nuisance conditions, off-site safety problems, and the nature of the end use of the land. *See, e.g.*, § 30–28–101 et seq., C.R.S. 1973 (1982 Cum.Supp.); § 24–67–101 et seq., C.R.S. 1973 (1982 Repl.Vol. 10); and § 24–65.1–101 et seq., C.R.S. 1973 (1982 Repl.Vol. 10).

■ In fact, rather than preempting local regulation of mining operations, the Reclamation Act specifically provides, in § 115(4) that: "The board shall grant a permit to an operation if the application complies with the requirements of this article *and all applicable local,* state, and federal *laws. . . .*" (emphasis supplied) Furthermore, one of the reasons for which a permit shall be denied is if "[t]he mining operation would be in *violation of any* city, town, *county,* or city and county *zoning* or subdivision regulations or contrary to any master plan for extraction adopted pursuant to [the Preservation Act]." Section 34–32–115(4)(e), C.R.S. 1973 (1982 Cum.Supp.). (emphasis supplied) In addition, the Reclamation Act provides in § 109(6):

> "[T]he board shall not grant a permit in violation of city, town, *county,* or city and county *zoning* or *subdivision regulations* or contrary to any master plan for extraction adopted pursuant to [the Preservation Act] unless a prior declaration of intent to change or waive the prohibition is obtained by the applicant from the affected government subdivisions." (emphasis supplied)

and in § 109(8):

> "The board shall not grant a permit for a new mining operation if the operator's reclamation plan for an area is inconsistent with an *adopted plan by any county,* city and county, city, or town unless a prior declaration of intent to change or waive the prohibition is obtained by the applicant from the affected government subdivisions . . . ." (emphasis supplied)

It is, therefore, apparent from the statutory language itself as well as from the purpose and scope of the legislation that there is no conflict or inconsistency between the zoning resolution and the Reclamation Act, and that they can coexist. The Act preempts only the authority of local government to set performance standards for mined land reclamation activities, but does not prohibit local regulation by permit of all aspects of land use for mining, including the location of mining operations and related reclamation activities and other environmental and socioeconomic impacts. Reading the two together, we conclude that unless the subject land is zoned for mining use or permission for such use is granted by the local government following special use review proceedings, the operator is not eligible to receive a mining permit from the

Reclamation Board. The laws are compatible with each other.

 The Preservation Act is a narrow statute which permits local governments to pass zoning ordinances that forbid mining operations in areas containing commercial mineral deposits. Local governments are prohibited only from allowing "the use of any area known to contain a commercial mineral deposit in a manner which would interfere with the present or future extraction of such deposit by an extractor." Section 34-1-305(1) and (2), C.R.S. 1973. By zoning, rezoning, granting a variance, or other action or inaction, local governments can permit any use of such land so long as the permitted use is not incompatible with mining, such as erecting permanent structures on this land. The Act, then, does not require local governments to allow mining in any area where it is commercially practicable, but only to preserve access to the mineral deposits. And, this Act does not apply to counties whose population is less than 65,000. Local land use regulation is not preempted by this statute.

It is apparent that the general assembly intended that mining operations be subject to a multi-level regulatory and permitting system involving both state agencies and local government. The Reclamation Board is only one permitting authority, albeit the final one. The trial court erred in holding that the special use review procedure under the county zoning resolution is void.

## II.

### C.R.C.P. 106(a)(4) REVIEW

Plaintiffs on cross-appeal contend that: (1) the commissioners exceeded their jurisdiction in denying C & M's application; (2) insufficient standards were provided in the zoning resolution for choosing between the withholding of a permit or the granting of a permit with conditions, and therefore, those standards cannot be construed to authorize the denial of a permit; and (3) there was insufficient evidence to support the commissioners' decision. We disagree.

In addition to the preemption arguments disposed of above, C & M claims *Western Paving Construction Co. v. Board of County Commissioners,* 181 Colo. 77, 506 P.2d 1230 (1973) is dispositive of their contention that the commissioners exceeded their jurisdiction. However, in view of the amendments to the county zoning resolution since *Western Paving* was decided, that case is now inapposite. Open mining of sand and gravel is no longer listed as a use by right in any zoning district. Such mining operations are now only allowed upon approval of the commissioners following a special use review proceeding.

██ The zoning resolution sets out general standards for granting or denying a special use, which include the requirements that the proposed use: (1) will be in harmony and compatible with the character of the surrounding areas and neighborhood; (2) will be consistent with the county comprehensive plan; (3) will not result in an over-intensive use of land; (4) will not have a material adverse effect on community capital improvement programs; (5) will not require a level of community facilities and services greater than that which is available; (6) will not result in undue traffic congestion or traffic hazards; (7) will not cause significant air, water, or noise pollution; (8) will be adequately landscaped, buffered, and screened; and (9) will not otherwise be detrimental to the health, safety, or welfare of the present or future inhabitants of the county. It provides that if a special use is granted, the commissioners may impose such conditions and safeguards as are necessary to insure compliance with these standards.

These provisions provide sufficient standards for the denial of a special use. *See generally Tri-State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (Colo.1982); *Cimarron Corp. v. Board of County Commissioners,* 193 Colo. 164, 563 P.2d 946 (1977); *Stroud v. City of Aspen,* 188 Colo. 1, 532 P.2d 720 (1975); *Garel v. Board of County Commissioners,* 167 Colo. 351, 447 P.2d 209 (1968); *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621 (1965); and *General Outdoor Advertising Co. v. Goodman,* 128 Colo. 344, 262 P.2d 261 (1953). And, these standards were utilized by the commissioners in rejecting C & M's application.

Finally, "[t]he standard of review under Rule 106(a)(4) of final administrative action is whether, on the basis of the whole record, the ultimate findings of the agency are supported by any competent evidence." *Cooper v. Civil Service Commission,* 43 Colo. App. 258, 604 P.2d 1186 (1979). Based on our review of the record, we conclude that although some of the evidence was conflicting, the 11 specific findings made by the commissioners were supported by competent evidence and, in turn, support the commissioners' ultimate findings and decision.

The dismissal of the C.R.C.P. 106(a)(4) claim is affirmed. The declaratory judgment on preemption is reversed, and the cause is remanded for dismissal of that claim and of the entire action.

BERMAN and TURSI, JJ., concur.