Cole Finegan Office of the Governor State Capitol Building Denver, CO 80203 October 16, 1995
Dear Mr. Finegan:
I write in response to your request for a formal Attorney General's Opinion. You have asked that we provide an update on an opinion issued to Ken Salazar on May 30, 1991.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Do local governments have statutory authority to regulate development and structures within flood hazard areas?
Yes.
2. Does the term "structures" in § 30-28-201, C.R.S. (1990 Supp.) include diversion boxes, check dams, bypasses and flumes?
Yes.
3. Pursuant to §§ 30-28-201 to -209, C.R.S. (1986 1990 Supp.), may counties regulate the construction of buildings or structures used for agricultural purposes?
Yes.
ANALYSIS
1. Colorado has received inquiries from the Federal Emergency Management Agency (hereinafter, "FEMA") about the authority of Colorado counties and other local governments to regulate flood hazard areas.
The purpose of these inquiries is to determine whether Colorado counties qualify for federal flood insurance.[1] Under Federal law, each state must give satisfactory assurance to FEMA that it has "adopted land use and control measures with effective enforcement provisions which the Director finds are consistent with the comprehensive criteria for land management and use."42 U.S.C. § 4022 (1989). To qualify for federal flood insurance, local communities must have legal authority to implement land use and control measures which comply with federal requirements. 44 C.F.R. § 60.2(a) (1990).
Your request asks whether Colorado law permits local governments to regulate development, including but not limited to fills, levees and building structures, in floodplains and other areas susceptible to floods. For the reasons set forth below, we conclude that state law permits local governments to regulate such development.
The primary task involved in statutory construction is to determine and give effect to the intent of the General Assembly.State v. Hautsough, 790 P.2d 836, 838 (Colo. 1990). The legislative intent must be gleaned from the language of the statute, and the words must be given their commonly accepted meanings. Thiret v. Kautzky, 792 P.2d 801, 806 (Colo. 1990). The statute must be read as a whole to give consistent, harmonious and sensible effect to all of its parts. AdamsCounty School District No. 50 v. Dickey, 791 P.2d 688, 691
(Colo. 1990). Statutes concerning the same subject matter should be construed together and reconciled to the extent possible.State of Colorado, Department of Revenue v. Borquez,751 P.2d 639, 643 (Colo. 1988).
The authority of the local governments to regulate usage and development within floodplains and other areas which are susceptible to floods is grounded upon three statutes. The first, §§ 30-28-101 to -137, C.R.S. (1986), grants to counties the authority to adopt zoning regulations for unincorporated areas which lie outside cities and towns. In particular, the counties may regulate "[t]he uses of land . . . for floodcontrol." Section 30-28-113(1), C.R.S. (1986) (emphasis added). This power includes the authority to establish flood control districts, Famularo v. Board of CountyCommissioners of Adams County, 180 Colo. 333, 337, 505 P.2d 958,959 (1973), which will minimize the impact of large storms, § 30-28-133(3)(c)(VII) and (4)(b), C.R.S. (1986).
In addition, all local governments have authority to regulate land use under the Local Government Land Use Enabling Act, §§29-20-101 to -107, C.R.S. (1986 1990 Supp.). Under this Act, "`[l]ocal government' means a county, home rule or statutory city, town, territorial charter city, or city and county." Section 29-20-103(1), C.R.S. (1986). The Legislature has declared that the policy of the State is to "provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." Section 29-20-102, C.R.S. (1986). In particular, each local government may regulate development and activities in hazard areas, and otherwise plan for and regulate the use of land to provide for planned and orderly usage and protection of the environment. Section 29-20-104(1)(a) and (h), C.R.S. (1986).
A third statute, §§ 24-65.1-101 to -108, C.R.S. (1988 1990 Supp.) grants to local governments the authority to designate as matters of state interest areas and activities which are located in a county but which may affect other parts of the state. Local governments under this statute include counties and municipalities. Section 24-65.1-102(2), C.R.S. (1988). Each local government may designate natural hazard areas. Section24-65.1-201, C.R.S. (1986). A "natural hazard" is "a geologic hazard, a wildlife hazard or a flood." Section 24-65.1-103(13), C.R.S. (1988). A "natural hazard area" is "an area containing or directly affected by a natural hazard." Section 24-65.1-103(14), C.R.S. (1988). The local government is responsible for administering such areas in accordance with the model regulation enacted by the Colorado Water Conservation Board.[2] Section24-65.1-202(2)(a)(I) and (b), C.R.S. (1988). In particular, floodplains must be administered "so as to minimize significant hazards to public health and safety or to property." Section 24-65.1-202(2)(a)(I).
Courts historically have found that these statutes grant extensive authority to local governments. SeeOborne v. County Commissioners of DouglasCounty, 764 P.2d 397, 400 (Colo.App. 1988) ( § 30-28-101, C.R.S. (1986) and § 29-20-101, C.R.S. (1986) afford local governments broad authority to regulate land uses);C M Sand and Gravel v. Board of CountyCommissioners, 673 P.2d 1013, 1017 (Colo.App. 1983) (§§ 30-28-101, 29-20-101 and 24-65.1-101 vest broad authority in local governments to regulate land use). These statutes establish a clear intent to prevent or minimize flood damage. They provide, either specifically or by clear implication, authority to local governments to pass flood control regulations in order to prevent flood damage.
2. FEMA has also asked whether the term "structures" in § 30-28-201, C.R.S. (1990 Supp.) includes diversion boxes, check dams, bypasses and flumes.
Section 30-28-201(1), C.R.S. (1990 Supp.) authorizes county commissioners to:
 [a]dopt ordinances and a building code consistent
with the uniform building code . . . The requirements shall be uniform for each class of dwelling, building, or structure . . . .
(Emphases added).
Section 30-28-209 provides, in pertinent part:
 In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, remodeled, used, or maintained in violation of this part 2 or of any provision of the area building code, the district attorney of the district, the board of county commissioners, or any owner of real estate within the area, in addition to other remedies provided by law, may institute an appropriate action for injunction, mandamus, or abatement to prevent, enjoin, abate, or remove such unlawful erection, construction, reconstruction, alteration, remodeling, maintenance, or use.
(Emphasis added).
Prior to 1990, the word structure meant "a combination of roof and supporting walls and columns." Section 30-28-201(1), C.R.S. (1986). This definition was interpreted to exclude structures such as diversion boxes and conduits. City and County ofDenver v. Bergland, 517 F. Supp, 155, 208 (D. Colo. 1981),aff'd in part, rev'd in part on other grounds, 695 F.2d 465
(10th Cir. 1982).
In 1990, the legislature deleted this definition from §30-28-201(1). In its place, the legislature instructed counties to adopt building codes consistent with the Uniform Building Code (hereafter "UBC"). Section 30-28-201(1), C.R.S. (1990 Supp.). The UBC uses a much broader definition of structure. A structure is:
 that which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.
International Conference of Building Officials, UniformBuilding Code 32 (1991 Ed). The preface to the UBC states that it "is dedicated to development of better building construction and greater safety to thepublic" (emphasis added). Id. at iii.
When the legislature amends a statute, it is presumed that it acted with an awareness of prior decisional law on the subject matter under inquiry. People v. Davis, 794 P.2d 159,181 (Colo. 1990). Amendment of a statute normally evidences an intent by the legislature to change the law. Peoplein Interest of D.B., 767 P.2d 801, 802 (Colo.App. 1988). In this instance, then, it is presumed that the legislature was aware that the prior language was interpreted to exclude structures such as diversion boxes and that, by removing the more restrictive definition, the legislature intended to include such structures. Allowing counties to regulate such devices is consistent with both the overall state policy of providing local government with the opportunity to protect citizens from the ravages of floods and the UBC's goal of providing greater overall safety to the public.
3. FEMA has asked whether § 30-28-201(1) includes structures used for the sole purpose of providing shelter for agricultural implements, farm products, livestock and poultry. Section 30-28-201(1) provides that "[b]uildings or structures used for the sole purpose of providing shelter for agricultural implements, farm products, livestock or poultry may be excepted" from building codes. (Emphasis added.) The use of the word "may" indicates that it is within the counties' discretion to subject agricultural buildings to the requirements of a building code. See, e.g., Danielson v. CastleMeadows, Inc., 791 P.2d 1106, 1113 (Colo. 1990) ("may" generally connotes permissive construction). Moreover, the UBC specifically regulates agricultural buildings, including buildings used for storage, livestock and poultry, milking barns, shade structures and horticultural structures. International Conference of Building Officials, Uniform Building Code
847 (1991 Ed.). Thus, a fair and logical reading of § 30-28-201(1) is that counties are given the discretion to include such agricultural buildings in a building code.
FEMA also asks whether state law prohibits the counties from issuing building permits for structures used for the sole purpose of sheltering agricultural implements, farm products, livestock or poultry. Section 30-28-205, C.R.S. (1986) provides, in pertinent part:
 (1) . . . . After the adoption of such building code, it shall be unlawful to erect, construct, reconstruct, alter, or remodel any structure, dwelling, or building in the designated area, except buildings or structures used for the sole purpose of providing shelter for agricultural implements, farm products, livestock, or poultry without first obtaining a building permit from such county building inspector . . . .
On it face, this provision appears to preclude counties from issuing building permits for agricultural structures. However, this provision must be read in conjunction with § 30-28-201
which allows counties to regulate the construction of agricultural buildings. Building permits assure compliance with building codes. In light of the purpose of building permits and the overall goal of limiting or preventing flood damage, §30-28-205 must be interpreted to allow a county to require building permits when it has exercised its discretion to bring agricultural buildings within the building codes.
SUMMARY
Local governments may regulate development in a manner which is necessary to minimize flood hazards. Local governments may require persons building agricultural structures and flood control devices to obtain building permits and to construct such structures in accordance with applicable zoning regulations on building codes.
Sincerely,
 GALE A. NORTON Attorney General
COUNTIES FLOODS LAND USE
Section 24-65.1-101, C.R.S. (1988 1990 Supp.) Section 24-65.1-101 to -108, C.R.S. (1988 1990 Supp.) Section 24-65.1-102(2), C.R.S. (1988) Section 24-65.1-103(13), C.R.S. (1988) Section 24-65.1-103(14), C.R.S. (1988) Section 24-65.1-201, C.R.S. (1986) Section 24-65.1-202(2)(a)(I) and (b), C.R.S. (1988) Section 29-20-101, C.R.S. (1986) Section 29-20-101 to 107, C.R.S. (1986 1990 Supp.) Section 29-20-102, C.R.S. (1986) Section 29-20-103(1), C.R.S. (1986) Section 29-20-104(1)(a) and (h), C.R.S. (1986) Section 30-28-101, C.R.S. (1986) Section 30-28-101 to -137, C.R.S. (1986) Section 30-28-113(1), C.R.S. (1986) Section 30-28-133(3)(c)(VII) and (4)(b), C.R.S. (1986) Section 37-60-106(1)(c), C.R.S. (1990)
NATURAL RESOURCES
Local governments may regulate development in a manner which is necessary to minimize flood hazards. Local governments may require persons building agricultural structures and flood control devices to obtain building permits and to construct such structures in accordance with applicable zoning regulations or building codes.
[1] This opinion does not address possible compensation issues.See First English Evangelical Lutheran Church v.County of Los Angeles, 482 U.S. 304 (1987).
[2] The Colorado Water Conservation Board, a state agency, also has authority to enact regulations to minimize the effects of floods. The Board has the duty to "formulate methods, means and plans for bringing about the greater utilization of the waters of the state and the prevention of flood damages therefrom . . . ." Section37-60-106(1)(c), C.R.S. (1990).