Frank LEEK, Mildred Burk, Sherman Wenger, Carol K. Stuckey, Larry T. Wright, and Byron Reeser, as citizens, voters and taxpayers of the City of Golden, Colorado, for themselves and also as representatives on behalf of all other citizens, voters, and taxpayers of the City of Golden, Colorado, Plaintiffs–Appellants and Cross–Appellees,

v.

The CITY OF GOLDEN, Colorado, a municipal corporation; Marvin L. Kay, as the Mayor of the City of Golden and also as a member of the City Council of the City of Golden, Colorado; Richard Cusack, Matthew K. Faykosh, Leslie M. Hawkinson, John R. McInerney, Robert A. Ourada, and Jan C. Schenck, as members of the City Council of the City of Golden, Colorado; Susan Brooks, as the City Clerk for the City of Golden, Colorado; and James A. Windholz, as the City Attorney for the City of Golden, Colorado, Defendants–Appellees and Cross–Appellants.

No. 92CA1951.

Colorado Court of Appeals, Div. V.

Oct. 7, 1993.

As Modified on Denial of Rehearing Nov. 12, 1993.

Certiorari Denied April 11, 1994.

Kramlich & Anderson, Gwen S. Anderson, J. Scott Needham, Denver, for plaintiffs-appellants and cross-appellees.

James A. Windholz, City Atty., David S. Williamson, Asst. City Atty., Boulder, Holme, Roberts & Owen, Walter H. Sargent, Erin M. Smith, Patricia L. Tisdale, Denver, for defendants-appellees and cross-appellants.

Opinion by Judge TAUBMAN.

Plaintiffs, Frank Leek, Mildred Burk, Sherman Wenger, Carol Stuckey, Larry Wright, and Byron Reeser (taxpayers), appeal from the summary judgment entered on their claims for misleading ballot statement, improper issuance of sales and use tax revenue bonds, and improper consolidation of the preliminary injunction hearing with the trial under C.R.C.P. 65(a)(2). Defendants, the City of Golden and various city officials (collectively, the city), cross-appeal claiming mootness because the bonds in question have already been issued. We conclude that the plaintiffs' appeal is not moot but affirm the judgment entered.

On March 14, 1991, the Golden City Council adopted Resolution No. 319 (the Resolution) calling for a special municipal election on the question of whether the city's sales and use tax should be increased to finance various capital improvements. The Resolution set the election for May 21, 1991, and specified that the question on the ballot would read:

> Shall the City of Golden provide for capital improvements, including downtown improvements, a community center and other public improvements throughout the city, to be accomplished by increasing the

city's sales tax and use tax by an additional one cent (1¢) on the dollar or fraction thereof, effective July 1, 1991, the pledging of such tax increase specifically for such capital improvements and for no other purpose, and the creation of a sales and use tax capital improvement fund?

The Resolution was publicly opposed because of the possible use of bonds to finance capital improvements. Nevertheless, the city electorate approved the ballot proposal. The city council passed Ordinance No. 1121 to implement the ballot question. Ordinance No. 1121 raised the city sales and use taxes and established the sales and use tax capital improvement fund (fund) in compliance with the Resolution, the ballot question, and the election results.

On September 24, 1992, acting pursuant to §§ 29-2-111 and 29-2-112, C.R.S. (1986 Repl.Vol. 12A), the city council enacted Ordinance No. 1164 and authorized the issuance of sales and use tax revenue bonds in the amount of $6,085,000. This ordinance required the bond proceeds to be used to build a community center and stated that the bonds would be payable solely from the fund and a "bond account" containing monies transferred from the fund.

Taxpayers filed suit against the city challenging the approval of the ballot question and Ordinance No. 1164 in October 1992. They set forth three claims for relief. First, they alleged that the ballot question was misleading because it failed to advise voters that the city would issue bonds secured by the fund. Second, taxpayers claimed that the enactment of Ordinance No. 1164 violated the city citizens' constitutional right under Colo. Const. art. XX, § 6, to vote on all bond issues and that the ordinance was outside the scope of powers granted to the city in its charter. Third, taxpayers alleged that the city violated their constitutional due process rights by pledging city tax revenues to pay for interest on the bonds without first providing the taxpayers with a meaningful opportunity to be heard on this matter. Taxpayers requested a declaration that the election and Ordinance No. 1164 were void and a permanent injunction against the city's issuance of the bonds.

The trial court held a hearing on taxpayers' motions for a temporary restraining order and a preliminary injunction restraining the issuance of the bonds. At the hearing, the trial court accepted the parties' offers of proof and evidentiary stipulations and found that the material facts were undisputed. The court also determined that it had sufficient information to make a decision on the merits of the case and therefore consolidated the hearing on taxpayers' motions with trial on the merits pursuant to C.R.C.P. 65(a)(2).

The trial court found the ballot question clear and unambiguous. It further concluded that, once the fund had been lawfully established and approved by the electorate, the city could issue revenue bonds under the fund without further elections. The trial court also found that the city, in adopting Ordinance No. 1164, did not deprive taxpayers of their due process rights under Colo. Const. art. XX, § 6. Finally, the trial court denied the preliminary injunction because the taxpayers had no probability of succeeding on the merits. The trial court dismissed their claims with prejudice. This appeal and cross-appeal followed.

## I. Mootness

■ The city contends that the only relief requested by taxpayers was an injunction against issuance of the bonds or entry into a bond agreement; therefore, it argues that the taxpayers' appeal is moot because the bonds have been issued, and thus, no effective legal remedy remains. We disagree.

■ A case is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy. *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424 (Colo.1990). "The central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of the litigation has forestalled the prospect for meaningful relief." *Zoning Board of Adjustment v. DeVilbiss*, 729 P.2d 353, 356 (Colo.1986).

Taxpayers contend that meaningful relief is still possible even if the bonds have been issued because we could conclude that the ballot question and Ordinance No. 1164 are

void and invalidate the bonds. This conclusion, they say, would have the same practical legal effect as an injunction since the community center project would be halted until paid from the sales and tax capital improvement fund. We agree in part with this argument.

In *Kingsley v. City & County of Denver*, 126 Colo. 194, 247 P.2d 805 (1952), the supreme court invalidated bonds issued for the purchase of voting machines because the City of Denver failed to comply with its charter provision requiring approval of the taxpaying voters. Furthermore, at least one court has held that even after bonds have been issued, a court may enjoin distribution of proceeds from bonds issued pursuant to a statute subsequently found unconstitutional. *Reeves v. Young*, 295 Ark. 506, 749 S.W.2d 327 (1988).

Here, taxpayers requested an order declaring void the ballot question and Ordinance No. 1164 and other appropriate relief in addition to an injunction barring issuance of the bonds. However, the city requests that we take judicial notice that the bonds have been delivered to an underwriter and issued to third parties. The city also asserts in its briefs that property has been purchased, an architectural firm has been engaged, and substantial site preparation work has begun. However, the city does not maintain that the proceeds of the bonds have been distributed.

If we were to conclude that the bonds were issued contrary to the city charter, we agree with the city that we could not invalidate them as in *Kingsley*, because of the provisions of § 29–2–112(10) C.R.S. (1986 Repl. Vol. 12A). However, arguably we could still enjoin distribution of the bond proceeds. *See Reeves v. Young, supra.* The practical legal effect of this relief would be identical to an injunction prohibiting the issuance of the bonds: the community center would be built solely from money raised directly through the sales and use tax. This is the ultimate relief sought by the taxpayers. Thus, meaningful relief is still possible, and therefore, we decline to dismiss this appeal as moot.

## II. The Ballot Question

■ Taxpayers contend that the ballot question presented to the electorate was misleading because it did not specify that bonds could be issued and secured under the fund. We disagree.

■ The power of the court to reject election results should be exercised with great caution and only as a last resort. *Baldauf v. Gunson*, 90 Colo. 243, 8 P.2d 265 (1932). Furthermore, courts should not interfere with the choice of ballot language if the language is not clearly misleading and fairly reflects the proposed question so that voters will not be misled to support or oppose a proposition by reason of the words employed. *In re Ballot Title Pertaining to Workers Comp Initiative*, 850 P.2d 144 (Colo. 1993).

The city argues that, because the language of the ballot question tracks the language of §§ 29–2–111 and 29–2–112, the ballot question is not misleading and fairly reflects the proposed purposes of the election. We agree.

Section 29–2–111 provides in pertinent part:

(1) A sales or use tax proposal ... may contain a provision for the creation of a special fund, to be known as the sales and use tax capital improvement fund, for the deposit for all or any part of the revenue from sales or use tax, or both, and to be used solely to provide capital improvements.

. . . .

(3) When sales or use tax revenue, or both, is pledged solely for capital improvement purposes, it shall be deposited ... into the sales and use tax capital improvement fund....

Section 29–2–112(2), C.R.S. (1986 Repl.Vol. 12A) permits issuance of sales and use tax revenue bonds secured solely by the fund without further election.

The language of the ballot question here is almost identical to § 29–2–111. The ballot question requests approval for a sales and use tax increase and the creation of a sales and use tax capital improvement fund. It specifically states that the proceeds from the increased tax will be deposited into the sales

and use tax capital improvement fund to be used solely to provide capital improvements. The tracking of § 29–2–111 language demonstrates the city's intent to create a sales and use tax capital improvement fund as contemplated in the statute. Accordingly, we cannot conclude that the ballot question was clearly misleading when the General Assembly contemplated this very procedure in enacting §§ 29–2–111 and 29–2–112.

In *Johnson v. McDonald,* 97 Colo. 324, 49 P.2d 1017 (1935), taxpayer challenged the use of a special fund to pay interest and bank fees. The supreme court upheld the use of the fund reserved by voter approval for the improvement of public highways to pay these fees. It noted that payment of interest on a warrant drawn from the fund has never been regarded "as a diversion of the fund for purposes other than that for which it was raised." *Johnson, supra,* 97 Colo. at 340, 49 P.2d at 1028. Similarly, voters here approved a sales and use tax revenue fund for capital improvements and the city issued bonds secured by this fund. Under *Johnson,* this action fell within the scope of the fund's purpose.

The resolution language further supports our determination that the ballot question was not clearly misleading. The resolution states that "the revenues generated by the increase [would] be used solely for the purpose of financing capital improvements and pledging such additional tax proceeds to and depositing the same in a sales and use tax capital improvement fund." The use of the word "financing" indicates an intent to use a variety of methods of raising or providing funds. *See Webster's Third International Dictionary* 851 (1986).

Thus, we conclude that language of the ballot question is not clearly misleading and fairly apprised the city's voters of the issues involved.

### III.   Authority to Issue Sales and Use Tax Revenue Bonds

■ Taxpayers next claim that even if the ballot question was not misleading, the city charter does not permit the issuance of sales and use tax revenue bonds. Taxpayers argue that the charter prohibits issuance of

this type of bond because it permits the issuance of only traditional revenue bonds. Since the charter refers only to traditional revenue bonds and municipal finance is strictly of local concern, taxpayers contend that § 29–2–112 is superseded under Colo. Const. art. XX, § 6. We disagree.

Colo. Const. art. XX, § 6 declares that the "charter [of the home rule city] and the ordinances made pursuant thereto in [local and municipal] matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith." It further states: "The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except insofar as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

In *Vela v. People,* 174 Colo. 465, 468, 484 P.2d 1204, 1206 (1971), the supreme court construed this constitutional provision to mean that "such charters and such ordinances supersede state law in conflict therewith." The *Vela* court specifically overruled *City of Canon City v. Merris,* 137 Colo. 169, 323 P.2d 614 (1958), stating that: "[W]e now expressly overrule the dicta ... which suggests that in strictly local and municipal matters ordinances of home rule cities apply to the exclusion of state statutes." *Vela v. People, supra,* 174 Colo. at 468, 484 P.2d at 1206. The *Vela* court further refined this doctrine by holding that city charters and ordinances supersede state law only if there exists a conflict on a matter of strictly local concern. *See, e.g., City & County of Denver v. State,* 788 P.2d 764 (Colo.1990).

■ Taxpayers contend that the city's charter prohibits the issuance of sales and use tax revenue bonds and § 29–2–112 conflicts with the charter. We disagree, and conclude that no conflict exists between the charter and § 29–2–112.

*Ray v. City & County of Denver,* 109 Colo. 74, 77, 121 P.2d 886, 888 (1942) set forth the test for determining whether a state statute and a local ordinance are in conflict: both the statute and municipal ordinance should "contain either express or implied conditions

which are inconsistent and irreconcilable with each other." *See C & M Sand & Gravel v. Board of County Commissioners,* 673 P.2d 1013 (Colo.App.1983).

■ Colo. Const. art. XX defines home rule city charters as documents of limitation. Thus, home rule cities are constitutionally granted every power possessed by the General Assembly unless restricted by their respective charters. *Veterans of Foreign Wars v. City of Steamboat Springs,* 195 Colo. 44, 575 P.2d 835 (1978). Golden Municipal Charter § 2.2 acknowledges this broad power, granting the city all powers, functions, rights, and privileges not expressly prohibited by the constitution or statutes. Thus, the charter gives the city broad power to do anything not prohibited by constitution, statute, or the charter itself.

Additionally, Golden Municipal Charter § 12.1 permits the City to "borrow money and issue the following securities to evidence such borrowing:

a. Short-term notes,

b. General obligation bonds and other like securities,

c. Revenue bonds and other like securities,

d. Local improvement bonds and other like securities."

Golden Municipal Charter § 12.1 through § 12.7 makes further provisions for issuing short-term notes, general obligation bonds, and revenue bonds.

Sales and use tax revenue bonds fall within the "other like securities" provision of revenue bonds in the city's charter. Under the "special fund doctrine," revenue bonds are paid out of a special fund into which certain revenues have been deposited. The purpose of these funds is to permit a city to avoid incurring debt limited by statute or charter. Since the special fund revenue bonds do not constitute debt under the statute or charter, their issuance does not require voter approval. J. Banks, *Colorado Law of Cities & Counties* 289 (3rd ed. 1989). Thus, Golden City Charter § 2.2 and § 12.1, read together, give the city broad power to issue sales and use tax revenue bonds.

Section 29–2–112 supplements the charter by providing guidelines for issuing sales and use tax revenue bonds.

Under the test set forth above, § 29–2–112 does not conflict with the charter. Section 29–2–112 does not contain inconsistent or irreconcilable conditions. In fact, § 29–2–112 complements the provisions of the Golden City Charter by providing specific election requirements for other types of securities.

Since the charter and § 29–2–112 are not in conflict, the supersession doctrine of Colo. Const. art. XX, § 6 is inapplicable. Accordingly, the issuance of sales and use tax revenue bonds is clearly within the city's authority and the trial court properly so ruled.

## IV. Appropriateness of C.R.C.P. 65(a)(2) Consolidation

■ Taxpayers claim that the trial court committed reversible error when it consolidated the preliminary injunction hearing with the trial on the merits without giving the parties prior notice of the consolidation or the taxpayers an opportunity to cross-examine the city's witnesses on whose behalf offers of proof were submitted. Again, we disagree.

C.R.C.P. 65(a)(2) gives the trial court discretion to consolidate a preliminary injunction hearing with a trial on the merits before or after the commencement of the hearing if the court believes that it has sufficient evidence before it to decide the case on the merits. Although C.R.C.P. 65(a)(2) does not require any notice to the parties of the consolidation, the U.S. Supreme Court, interpreting the corresponding federal rule, has indicated that parties should normally receive clear and unambiguous notice of the court's intent to consolidate the trial and the preliminary injunction hearing either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases. *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

Nevertheless, a trial court judgment will not be reversed unless the errors complained of "are shown to prejudice the substantial rights of the complaining party." *Poudre Valley Rural Electric Ass'n v. City of Loveland,* 807 P.2d 547, 557 (Colo.1991). That is the case here.

Taxpayers argue that the inability to cross-examine the city's witnesses violated their due process rights under the U.S. and Colorado Constitutions. However, after the commencement of the preliminary injunction hearing, the trial court announced that it intended to consolidate the injunction hearing with the trial on the merits. It afforded both sides the opportunity to submit offers of proof and stipulations in order to provide them a full opportunity to present their respective cases. Both parties then submitted offers of proof to the trial court. Thus, taxpayers were not denied due process.

Taxpayers suggest that if given the opportunity to cross-examine the city's witnesses they might have been able to impeach their credibility. However, taxpayers fail to allege any specific harm resulting from this procedure. Also, through the offers of proof, both parties' testimony was given the benefit of the doubt by the trial court under the Colorado Rules of Evidence. If any error occurred in this procedure, it was harmless.

Judgment affirmed.

HUME and DAVIDSON, JJ., concur.